JOSHUA M. SEARS *vs.* STREET COMMISSIONERS OF THE
CITY OF BOSTON.

OLIVER AMES & others, trustees, *vs.* SAME.

FRANCIS PEABODY, JR. & others, trustees, & another *vs.* SAME.

DAVID W. CHEEVER *vs.* SAME.

JOHN LAWRENCE & others, trustees, *vs.* SAME.

A. LAWRENCE ROTCH *vs.* SAME.

JAMES B. CASE & others *vs.* SAME.

PERCIVAL LOWELL & others *vs.* SAME.

NATHANIEL HATHAWAY & another *vs.* SAME.

H. HOLLIS HUNNEWELL *vs.* SAME.

WILLIAM A. GASTON & another *vs.* SAME.

EBEN D. JORDAN & others, trustees, *vs.* SAME.

Suffolk.   November 15, 1901. — January 3, 1902.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Statute*, Construction.   *Constitutional Law*, Assessments.

St. 1896, c. 516, § 14, provided that the board of street commissioners of the city of Boston should, within two years after the completion of the south union station, assess upon any real estate in Boston which in the opinion of that board re-

ceived any benefit and advantage from the location and construction of that station, Summer Street and Cove Street, beyond the general advantage to all real estate in the city, a proportionate part of one half of the expense incurred by the city therefor, but in no case exceeding such benefit and advantage. The act created a corporation which was to build and own the station. The city was to pay for the changes in the streets. The station could not be used without the extension of the streets and such extension was unnecessary apart from the building of the station. *Held,* that the above provision of the act treated the improvement as a unit, and in making an assessment thereunder it was right to lump the cost of both streets and the benefit of the whole improvement, and that the statute thus construed was constitutional.

The building of the south terminal station in Boston and providing access to it constituted a purpose sufficiently public to justify the imposition by statute of a special assessment.

When property is increased in value by the building of a union railroad station and its approaches and the source of the benefit is the direction given to public travel along a special channel, this is a proper subject of special assessment.

It does not invalidate the statutory imposition of a betterment assessment, that the special benefits are only incidental to an improvement made for the benefit of the public in general, when the act authorizing the assessment shows that the incidental consequences were contemplated.

St. 1896, c. 516, § 14, providing for the assessment of betterments for one half the expense incurred by the city of Boston in extending Summer and Cove Streets as required by that act in order to provide approaches for the south terminal station, contained a proviso, that the terminal company should convey in fee to the city certain lands required for the widening and extension of those streets. The streets had been laid out over these lands before the assessment was made; but the deed from the terminal company was not given until afterwards. *Held,* that the proviso merely attached a subsidiary requirement, the performance of which was not a condition precedent to the right to assess.

TWELVE PETITIONS for writs of certiorari to determine the validity of betterment assessments levied by the board of street commissioners of the city of Boston under St. 1896, c. 516, § 14, for one half the expense incurred by that city in extending Summer and Cove Streets as required by the act in order to provide approaches for the south terminal station, filed October 29, 1900, February 19, 25, March 5, 8, 13, 19, 28, April 4 and May 17, 1901.

The various petitions came on to be heard ten before *Knowlton,* J., one before *Lathrop,* J., and one before *Loring,* J., and, at the request of the parties, all the cases were reserved for the consideration of the full court on the petitions and answers, the returns of the respondents and agreed facts.

*E. W. Hutchins,* for the petitioner in the first case.

*J. H. Benton, Jr.,* for the petitioners in the second, third and fourth cases.

*A. Hemenway*, for the petitioners in the fifth case.

*W. L. Putnam*, for the petitioners in the sixth, seventh and eighth cases.

*C. W. Clifford*, for the petitioners in the ninth case.

*F. Rackemann*, for the petitioner in the tenth case.

*T. M. Babson*, for the respondents.

*W. A. Gaston, F. E. Snow & R. M. Saltonstall*, for the petitioners in the eleventh case, submitted a brief.

No counsel appeared for the petitioners in the twelfth case.

*L. D. Brandeis, W. H. Dunbar & J. G. Palfrey*, representing other persons similarly interested but not in the case, by permission of the court, filed a brief.

HOLMES, C. J.   These are petitions for writs of certiorari to quash assessments made by the defendants under St. 1896, c. 516, § 14.   The act created a corporation with power to build the southern union passenger station in Boston.   The stock was to belong to the five railroads that were to use the station, and the corporation was to purchase or take the specified land and to build the station.   By § 11, in order to render the station and passenger facilities accessible and convenient for public use, the defendants were ordered to make certain changes in the streets of Boston, the chief of which were the widening and extension of Cove Street and the extension of Summer Street, and then by § 14 they were directed to assess upon any real estate in Boston which in their opinion " receives any benefit and advantage from the location and construction of said union station, Summer Street and Cove Street, beyond the general advantage to all real estate in said city, a proportionate part of one half of the expense incurred by said city therefor, but in no case exceeding such benefit and advantage."   The defendants have made their assessment, reciting that " the Union Station, Summer Street, and Cove Street provided for by " the act " have been located, constructed and completed," adjudicating that each of the estates in a schedule " received benefit and advantage from such location and construction beyond the general advantage to all real estate in said city, and that said estates are all the estates receiving such benefit and advantage," determining the amount of " one half of the expense incurred by the city for such location and construction," and thereupon assessing upon each estate a

certain sum " as the part of said one half of said expense, proportionate to, and not exceeding, said benefit and advantage so received by the estate."

Against the assessment it is argued that by a true construction of the words quoted from the statute the cost and benefit ought to have been severed, so that half the cost of the extension of Summer Street, for instance, should have been assessed to those benefited by that extension, and to no others, instead of lumping the cost of both streets and the benefit of the whole improvement, as was done. It is argued further that, at least when construed as the defendants have construed it, the statute is unconstitutional, because it makes the petitioners pay for changes which did not benefit them, and further because it does not limit the sum with which they may be charged by the benefit accruing from the outlay of the city, but only by the benefit of the whole establishment of the union station. It is said that even if it had been a public building an assessment of cost to the extent of the benefit from the station to the petitioners' land would not have been warranted, both because the benefit was merely the general public benefit and also was too remote and uncertain, and because, whatever its kind, it was an accidental result of a change made not for the purpose of improving the petitioners' land but with a different intent. But the station was not a public building, and a further objection still is based upon the fact that it was built with the money of a private corporation and belonged to that corporation when built. Some minor matters were mentioned, but these are the main points.

We shall spend no time upon the construction of the statute, because we hardly could make it plainer than it is made by the literal meaning of the words of the act that the improvement was treated by the Legislature as a unit, the station being impossible without a change in the streets, the extension of the streets being unnecessary apart from the building of the station, two means of continuous public travel being thus brought together according to a single plan. The unity of the plan is emphasized by taking the completion of the station as the time from which the two years allowed for making the assessment shall begin to run.

The most serious question, and that to which the greater part of the argument was directed, is whether the statute is constitutional. The first subdivision of this question concerns the power of the Legislature to lump the cost of the streets, treating it all as the contribution of the city to a single object. As to this we have no doubt. It is easy to put cases of absurd attempts to unite by legislative fiat things which have nothing to do with each other. But such illustrations do not carry the argument far. There is no doubt that the Legislature within the limits of reason can group as one the distinguishable elements of a public improvement. *Lincoln* v. *Street Commissioners*, 176 Mass. 210, 212. To a greater or less extent it is necessary and habitual to group them in this way. *Alden* v. *Springfield*, 121 Mass. 27, 28. The only thing to be considered is whether the attempt to do so is unjustifiable in the particular case. We are of opinion that in this case the action of the Legislature was fully justified. We are of opinion that if, for instance, the whole enterprise had been carried out by the city, supposing other objections out of the way, and considering the power of the Legislature only with reference to treating the cost as one whole for the purpose of assessment, it would have been warranted in so doing by the organic relation of part to part, upon plain principles of common sense. It was argued that if the Legislature treated the scheme as one, then it should have provided for the assessment of estates benefited by the station in connection with other changes beside those made in Summer Street and Cove Street. But it will be remembered that the assessment is for a part of the cost of Summer Street and Cove Street alone, and that the benefit from the location and construction of the station and streets is only a limit. Reasons of detail for the decision of the Legislature were offered by the city solicitor. We deem it a sufficient answer that we cannot say that the Legislature was wrong. If we are right in our general view, of course it was proper to take the time of finishing the station as the moment for estimating the benefit, although the work of the city should be finished at an earlier moment.

But supposing that the Legislature could lump the cost to the city, it is said, it was bound to limit the assessment to the benefit to the petitioners' land from the city's expenditure and could

not include that from any other source.    With regard to this it
is to be remembered, that, in the language of Chief Justice Gray,
" The estates are assessed, not for the benefit conferred, but for
the cost of the public improvement."     *Chase* v. *Aldermen of
Springfield,* 119 Mass. 556, 563.    The petitioners are called on
to repay a part of what the city of Boston has spent, they are
not specially taxed for the gain to their lands.    The benefit is
referred to only as a justification and a limit.    If an outlay by
the city has made it possible for the petitioners to enjoy special
benefits otherwise justifying an assessment, we are at a loss to
see why it should be any more necessary that the city should
have created the benefit *in toto* than that it should have created
the matter out of which the station was built.    The foundation
on which the statute puts the petitioners' liability plainly is that
although the city did not pay for the whole thing, no part of it
would have been called into being without the city's payment, and
the city's payment was in fact so far the cause of the advantage
to the petitioners that it was entitled to assess on the footing
that its expenditures brought the improvement about.    Certainly
we cannot say that the Legislature was wrong.

Assuming all that we have decided thus far in favor of the
defendants, still, it is said, this particular scheme considered as a
whole was not a public improvement, and on that account pay-
ments toward it as a whole and special benefits from it as a
whole would not warrant an assessment.    So far as this objec-
tion is based on the general nature of the dominant purpose of
the union station, it is settled that that purpose is sufficiently
public to authorize the exercise of the power of eminent domain,
*Eastern Railroad* v. *Boston & Maine Railroad,* 111 Mass. 125,
or of general taxation, *Kittredge* v. *North Brookfield,* 138 Mass.
286, even for purposes of a pure gift, *Railroad Co.* v. *Otoe County,*
16 Wall. 667, 673, 675.    See *Supervisors* v. *Wisconsin Central
Railroad,* 121 Mass. 460, 470, 471 ; *Prince* v. *Crocker,* 166 Mass.
347, 361; *Browne* v. *Turner,* 176 Mass. 9.    And we see no rea-
son why it is not sufficiently public for special assessment also.
It is implied that it might be in *Brown* v. *Providence, Warren &
Bristol Railroad,* 5 Gray, 35, 39.    We are not now dealing with
the objection that the purpose is public in such a sense that a
local tax or assessment cannot be levied for it, that it is too

public, so to speak, *Dyar* v. *Farmington Village Corp.* 70 Maine, 515; that comes later. We are considering the opposite objection, urged however in the same breath, that it is not public at all. The cases cited are sufficient perhaps to answer the argument based on the fact that the ownership of the station was private, that the city did not get back a title for what it gave, (see also *Gleason* v. *Waukesha County*, 103 Wis. 225, 234,) and that the present use might be transitory. But further, as was observed by the city solicitor, in the care of streets it very well may happen that neither the city nor the persons assessed get any title and that the service is far more transitory than here, and yet that an assessment will be valid. *Sears* v. *Boston*, 173 Mass. 71. See *New York, New Haven, & Hartford Railroad* v. *Blacker*, 178 Mass. 386, 390.

We come now to the question whether there is anything in the nature of the benefit that enables us to say that the Legislature could not do what it attempted to do. It would be a matter for regret if the law as worked out by the courts with regard to the constitutional powers of the Legislature should be found to have taken so scholastic a form that an actual effect upon a well defined and limited part of a city which might be so distinct as to change the character of its use and to double its market value could not be recognized as a benefit when it came to the imposition of a tax. The truth is that the supposed objections are of so shadowy a form and consist so largely of rhetorical expressions that it is hard to grapple with them, and yet that they derive a kind of life from the atmosphere of the cases.

Upon a question of set-off against the payment for property taken for public uses, the line might be drawn strictly in order to give full effect to the constitutional requirement that what is taken shall be paid for. See *Upton* v. *South Reading Branch Railroad*, 8 Cush. 600; *Dickenson* v. *Fitchburg*, 13 Gray, 546; *Old Colony & Fall River Railroad* v. *Plymouth*, 14 Gray, 155, 163; *Whitman* v. *Boston & Maine Railroad*, 7 Allen, 313, 327; *Parks* v. *Hampden*, 120 Mass. 395; *Roberts* v. *Commissioners of Brown County*, 21 Kans. 247, 252. But it has been recognized that benefits which could not be set off might justify an assessment. *Upham* v. *Worcester*, 113 Mass. 97, 98. And even by

way of set-off in a proceeding for damages caused by the taking of land for a railroad it has been held that any peculiar increase of value in the market could be allowed. *Meacham* v. *Fitchburg Railroad*, 4 Cush. 291, 294, 298.

It is plain that the fact that the rise in value is common to all or many of the estates upon a street would not prevent the benefit being sufficiently peculiar for a betterment tax. *Upham* v. *Worcester*, 113 Mass. 97, 99. See *Abbott* v. *Cottage City*, 143 Mass. 521, 526; *Cross* v. *Plymouth*, 125 Mass. 557; *Allen* v. *Charlestown*, 109 Mass. 243, 246; *Wesson* v. *Washburn Iron Co.* 13 Allen, 95. No doubt it might be hard to draw the line between some cases where the benefit might be held special and a general advance of real estate in the vicinity which often has been said not to be sufficient for set-off, *Meacham* v. *Fitchburg Railroad*, 4 Cush. 291; *Parks* v. *Hampden*, 120 Mass. 395; although it is to be noticed that Mr. Chief Justice Gray, in speaking of benefits that cannot be assessed for, describes them as those which extend to all estates in the same town or city, *Upham* v. *Worcester*, 113 Mass. 97, 99, *Atkinson* v. *Newton*, 169 Mass. 240, 243, and that the same limit is adopted by § 14. But this difficulty does not arise where the source of the benefit is the direction given to public travel along a special channel. There the benefit is accurately localized.

Again the fact that the improvement is for a public purpose of course is no objection to the tax. *Harvard College* v. *Aldermen of Boston*, 104 Mass. 470, 486. *Lincoln* v. *Street Commissioners*, 176 Mass. 210, 213, 214. To invalidate the betterment assessment, the general public benefit must be the only result of the improvement. Such a change may have a double aspect of general public benefit and also of peculiar local advantage. *Gleason* v. *Waukesha County*, 103 Wis. 225, 237. It is suggested, to be sure, that the special benefits cannot be made the basis of a tax when they are only incidental and not the object to which the improvement was directed. See *Morgan Park* v. *Wiswall*, 155 Ill. 262, 274. But we see nothing in the Constitution to prevent it, or to make the power of the Legislature depend upon which of two resultant advantages is especially before its mind when it makes a change in the streets. In this case, plainly it contemplated improving the petitioners' land as

it provided for making them pay their share of the cost of the improvement.

As to the remoteness or speculative character of the advantage, we do not see what trouble there is on the former ground if the Legislature says that the advantage is near enough. It certainly does not affect the power of the Legislature that a loss of value caused by diversion of travel is not allowed for under some general provisions for the payment of damages, or, by decisions not without their difficulties, in case of the discontinuance of a way. *Stanwood* v. *Malden*, 157 Mass. 17. We are aware that the phrases "remote" and "speculative" have been used in that connection. But, as often has been pointed out, anticipations of the future are the main element in all values. *Johnston* v. *Faxon*, 172 Mass. 466, 467. With regard to speculativeness, the possible changes in the future use of the station and all the elements of doubt are discounted by the public and allowed for in market value.

A minor objection taken to the assessment is that although it is provided by § 14 that the city of Boston shall assume all assessments upon land of the terminal company, such an assessment should have been made in the first place, as thereby the share of the petitioners would be diminished. If it is not absurd, as the city solicitor contends, to assess for a public improvement land taken by eminent domain for that very improvement, it is enough to say that the defendants in their order adjudicated that the estates assessed were all the estates receiving benefit beyond the general advantage to all real estate in the city. We cannot go behind the adjudication on certiorari.

Finally it is objected that the terminal company had not conveyed certain lands to the city as required in a proviso of § 14, and that the conveyance was a condition precedent to the right to assess. The land had been laid out as a public street although the form of taking a deed was not gone through with until later. We are of opinion that the proviso was intended merely to attach some subsidiary requirements favorable in part to the city and in part to the terminal company, in the mode in which provisos often do, but not to attach a condition precedent to the right to assess. See *Considine* v. *Metropolitan Ins. Co.* 165 Mass. 462, 465.

We have considered all the numerous briefs submitted to us, in all their detail, and have dealt with such points of the combined argument as seemed to us most important. We are of opinion that none of the objections to the statute are valid, and that the assessment must stand.

*Petitions dismissed.*