WINTHROP COFFIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

STANLEY R. MILLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JAMES J. JACKSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

J. FRANK O'HARE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SAMUEL L. POWERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11556, 12498, 28049, 17002, 12944, 12945, 15996, 17856, 30377, 11558. Promulgated June 19, 1928.

*Robert H. Montgomery, Esq., Stanley R. Miller* pro se, and *Charles W. Mulcahy, Esq.,* for the petitioners.

*Harold Allen, Esq.,* and *W. S. Lansford, Esq.,* for the respondent.

OPINION.

SIEFKIN: In these proceedings the petitioners contend that the salaries received by them from the Boston Elevated Railway Co.

are not subject to income tax. This contention is based both upon section 1211 of the Revenue Act of 1926 and upon the broader ground that the petitioners received such salaries as officers of the Commonwealth of Massachusetts, and so not subject to tax by the United States.

Section 1211 of the Revenue Act of 1926 is as follows:

SEC. 1211. Any taxes imposed by the Revenue Act of 1924 or prior revenue Acts upon any individual in respect of amounts received by him as compensation for personal services as an officer or employee of any State or political subdivision thereof (except to the extent that such compensation is paid by the United States Government directly or indirectly), shall, subject to the statutory period of limitations properly applicable thereto, be abated, credited, or refunded.

The provisions of section 1211 were inserted in the Revenue Act of 1926 during the conference between the managers of the Senate and the House at the instance of the managers of the House Bill, who, in their statement accompanying the conference report, state:

Amendment No. 20: This amendment grants an exemption from taxation under the revenue act of 1924 to January 1, 1925, and under prior revenue acts of amounts heretofore received by officers or employees of any State or political subdivision thereof as compensation for personal services in such office or employment (except to the extent that such compensation is paid by the United States Government directly or indirectly), and provides for refund of any taxes that have been paid upon such incomes prior to January 1, 1925, if the statutory period for the refunding of such taxes has not expired; and the house recedes with an amendment transferring this provision to another place in the bill as section 1211.

The provision of the law, as passed was in substitution for the following provision in the Senate draft:

* * * No tax shall be imposed upon amounts heretofore received by officers or employees of any State or political subdivision thereof as compensation for personal services in such office or employment, except to the extent that such compensation is paid by the United States Government directly or indirectly. Any taxes imposed by the Revenue Act of 1924 or prior revenue Acts upon any individual in respect of amounts received by him as compensation for personal services as an officer or employee of any State or political subdivision thereof (except to the extent that such compensation is paid by the United States Government directly or indirectly), shall, subject to the statutory period of limitations properly applicable thereto, be abated, credited, or refunded.

As we view section 1211, it eliminated from consideration the difficult question as to whether the services performed by the state officer or employee were of a governmental character or not, leaving only for decision the question as to whether the amounts were received "as compensation for personal services as an officer or employee of any State * * *."

The petitioners urge that they are officers of the Commonwealth of Massachusetts and as such officers are not subject to tax upon the salaries received as officers. That each was appointed by the Governor of Massachusetts by virtue of and under a law of Massachusetts, is clear. That each was performing duties prescribed by such law is also clear. In *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514, the Supreme Court of the United States defined the terms " office " and " officers " of a State or subdivision. Mr. Justice Stone, speaking for the court, said :

An office is a public station conferred by the appointment of government. The term embraces the idea of tenure, duration, emolument and duties fixed by law. Where an office is created, the law usually fixes its incidents, including its term, its duties and its compensation. * * *

The term " officer " is one inseparably connected with an office, * * *

In that case the Supreme Court held that persons who received compensation from a State for services rendered under a contract with the State were not exempt from tax as to such compensation. The Supreme Court, after deciding that Metcalf and Eddy were not public officers or employees, discussed the general question of the exemption of instrumentalities of either a State or the Federal Government from taxation by the other. The opinion states :

As cases arise, lying between the two extremes, it becomes necessary to draw the line which separates those activities having some relation to government, which are nevertheless subject to taxation, from those which are immune. Experience has shown that there is no formula by which that line may be plotted with precision in advance. But recourse may be had to the reason upon which the rule rests, and which must be the guiding principle to control its operation. Its origin was due to the essential requirement of our constitutional system that the federal government must exercise its authority within the territorial limits of the states; and it rests on the conviction that each government in order that it may administer its affairs within its own sphere, must be left free from undue interference by the other. *McCulloch* v. *Maryland, supra; Collector* v. *Day, supra; Dobbins* v. *Commissioner of Erie County, supra.*

In a broad sense, the taxing power of either government, even when exercised in a manner admittedly necessary and proper, unavoidably has some effect upon the other. The burden of federal taxation necessarily sets an economic limit to the practical operation of the taxing power of the states, and vice versa. Taxation by either the state or the federal government affects in some measure the cost of operation of the other.

But neither government may destroy the other nor curtail in any substantial manner the exercise of its powers. Hence the limitation upon the taxing power of each, so far as it affects the other, must receive a practical construction which permits both to function with the minimum of interference each with the other ; and that limitation cannot be so varied or extended as seriously to impair either the taxing power of the government imposing the tax (*South Carolina* v. *United States*, 199 U. S. 437, 461, 26 S. Ct. 110, 50 L. Ed. 261, 4 Ann. Cas. 737 ; *Flint* v. *Stone Tracy Co., supra*, at page 172 [31 S. Ct. 342] or the appropriate exercise of the functions of the government affected by it (*Railroad Co.* v. *Peniston, supra*, 31.).

In these proceedings we need not consider whether the petitioners are employees. They certainly satisfy every requirement of the definition of " officers " as stated by the Supreme Court of the United States. As we view the question involved, that court has not decided the question we have here. In *Metcalf & Eddy* v. *Mitchell, supra,* it was found that the taxpayers were neither officers nor employees, and it was then necessary to determine whether the taxation of money received from a State for services rendered under a contract would constitute an impairment of the appropriate exercise of the functions of the State. In these proceedings we have individuals who satisfy all the requirements of " officers " unless certain provisions of the special act of Massachusetts which created their positions are sufficient to constitute them officers of the Boston Elevated Railway Co. instead of " public officers " of Massachusetts. The position of the respondent is that the provisions of the special act have that effect and must result in a denial of the exemption.

The act creating the positions filled by the petitioners provides, in part, as follows:

Section 1. The board of trustees of the Boston Elevated Railway Company is hereby created, to consist of five persons to be appointed by the governor, with the advice and consent of the council. The persons so appointed shall be sworn before entering upon the performance of their duties; shall own no stock or other securities of the Boston Elevated Railway Company or of any company owned, leased or operated by it; shall serve for the term of ten years from the date when they assume the management of the company as hereinafter provided and until their successors are duly appointed and qualified, and each shall receive from the company as compensation for his services five thousand dollars annually. In case of any vacancy in said board by reason of death, resignation or otherwise, the governor, by and with the consent of the council, shall fill the vacancy. The board shall designate one of the trustees so appointed to serve as chairman. Any member of the board may be removed for cause by the governor, with the advice and consent of the council.

*Said trustees shall not be considered public officers within the meaning of section twenty-five of chapter five hundred and fourteen of the acts of nineteen hundred and nine, but shall be subject in all other respects to the provisions of said section to the same extent as are the directors of the Boston Elevated Railway Company, but said section shall not apply to recommendations by the governor to said trustees. The provisions of section one of chapter seven of the Revised Laws shall not apply to the said board.*

If the public management and operation of the railway system of the Boston Elevated Railway Company shall continue beyond the original period of ten years the governor shall, with the advice and consent of the council, at the expiration of each ten-year period during the continuance of public management and operation, appoint five successor trustees to serve for a period of ten years, and until their successors are appointed and qualified, but not exceeding the period of public management and operation. Said trustees shall assume the management and operation of the company's property on the first day of the month next following their appointment and qualification.

Section 2. Said board of trustees, hereinafter called the trustees, shall manage and operate the Boston Elevated Railway Company hereinafter called the

company, and the properties owned, leased or operated by it, for a period of ten years, commencing on the first day of the month next after their appointment and qualification, and subject to the provisions of this act, shall take and have possession of said properties in behalf of the commonwealth during the period of public operation, and, for the purpose of this act, shall, except as is otherwise provided in this act have and may exercise all the rights and powers of said company and its directors, and, upon behalf of said company, shall receive and disburse its income and funds. They shall have the right to appoint and remove in their discretion the president, treasurer and clerk of the corporation, and all officers of the company other than the board of directors. They shall have the right to regulate and fix fares, including the issue, granting and withdrawal of transfers, and the imposition of charges therefor, and shall determine the character and extent of the service and facilities to be furnished, and in these respects their authority shall be exclusive and shall not be subject to the approval, control or direction of any other state board or commission.

*In the management and operation of the said company and of the properties owned, leased or operated by it, as authorized by this act, the trustees and their agents, servants and employees shall be deemed to be acting as agents of the company and not of the commonwealth,* and the company shall be liable for their acts and negligence in such management and operation to the same extent as if they were in the immediate employ of the company, but said trustees shall not be personally liable. A majority of the board shall constitute a quorum for the transaction of business, and the action of a majority of those present at any meeting shall be deemed the action of the trustees.

Nothing herein contained shall be held to affect the right of the commonwealth or any subdivision thereof to tax the company or its stockholders in the same manner and to the same extent as if the company had continued to manage and operate its own property.

Section 3. The trustees shall have authority to make contracts in the name and on behalf of, and to issue stocks, bonds and other evidences of indebtedness of, the company. No contracts for the operation or lease of any subways, elevated or surface lines in addition to those now owned, leased or operated by the company, or any extensions thereof beyond their present limits, shall be entered into which shall involve the payment of any rental or other compensation by the company beyond the period of public operation without the consent of the directors of the company, but surface lines may be constructed or purchased beyond the limits of existing surface lines after consent of the directors has been refused, if the trustees shall determine, after a public hearing, that public necessity and convenience require such construction or purchase; *provided, however,* that if the commonwealth shall elect under the provision of section twelve to discontinue the public management and operation of the company's property, no such surface lines shall thereafter be constructed or purchased without such consent.

All the authority heretofore granted to the company to accept the provisions of section five of Part I of chapter seven hundred and forty-one of the acts of nineteen hundred and eleven, as amended by chapter two hundred and ninety-seven of the Special Acts of nineteen hundred and fifteen is hereby conferred upon the trustees during the term of public operation, and the trustees shall have all powers which the company now has to enter into a contract under the provisions of chapter three hundred and forty-two of the Special Acts of nineteen hundred and sixteen; and upon the acceptance of such contract, any and all powers and obligations granted to and imposed upon any and all boards and municipalities by said act, had the company accepted the contract, shall thereby

be extended, revived and restored, so that such contract shall have the same force and effect as if the company had accepted it. The trustees shall cause to be paid all amounts which may from time to time become due from the company, and shall declare dividends at the appointed times upon the preferred and common stock of the company, and provide for the payment of the same.

Section 4. The stockholders of the company shall, as heretofore, elect a board of directors which shall, however, during the period of public operation, have no control over the management and operation of the street railway system, but its duties shall be confined to maintaining the corporate organization, protecting the interests of the corporation so far as necessary, and taking such action from time to time as may be deemed expedient in cases, if any, where the trustees cannot act in its place. The by-laws of the company shall be modified, as far as may be necessary, to conform to the provisions of this act.

By its acceptance of this act, the company and the stockholders and directors thereof shall be deemed to have assented to and authorized all issues of stock, bonds and other evidences of indebtedness which the trustees may find necessary or advisable during the period of public operation, or which may be required during the period of public operation to carry out any existing or future obligations of the company; but, notwithstanding such assent and authorization, the stockholders and directors shall from time to time take such action with respect thereto as may be requested by the trustees.

Such sum as may be deemed reasonable shall be allowed to the board of directors each year by the trustees to provide for the maintenance of the corporate organization of the company and the performance of such duties as may be necessary by the company and the directors.

* * * * * * *

Section 6. The trustees shall from time to time, in the manner hereinafter provided, fix such rates of fare as will reasonably insure sufficient income to meet the cost of the service, which shall include operating expenses, taxes, rentals, interest on all indebtedness, such allowance as they may deem necessary or advisable for depreciation of property and for obsolescence and losses in respect to property sold, destroyed, or abandoned, all other expenditures and charges which under the laws of the commonwealth now or hereafter in effect may be properly chargeable against income or surplus, fixed dividends on all preferred stock of the company from time to time outstanding, and dividends on the common stock of the company from time to time outstanding at the rate of five per cent per annum on the par value thereof during the first two years, five and one half per cent per annum on the par value thereof during the next two years and six per cent per annum on the par value thereof during the balance of the period of public operation. Dividends upon the common shares shall be payable quarterly, but no dividends shall be paid upon such common shares in excess of the rates herein specified. The first payment shall be made at the expiration of six months from the commencement of public operation, and the total of the first three quarterly dividend payments shall be five per cent on the par value of the common stock.

* * * * * * *

Section 12. Notwithstanding anything contained in this act, the public management and operation of the railway system of the company shall continue after the expiration of said ten year period upon the terms and conditions herein specified until such time as the commonwealth shall elect to discontinue such public management and operation. The commonwealth shall have the right to terminate such public management and operation, either at the expiration of the said ten year period or at any time thereafter, by

appropriate legislation passed not less than two years before the date fixed for such termination.

Section 13. It shall be the duty of the trustees to maintain the property of the company in good operating condition and to make such provision for depreciation, obsolescence and rehabilitation, that, upon the expiration of the period of public management and operation, the property shall be in good operating condition. If the period of public management and operation expires, control of the property shall then revert to the company, and if at that time the reserve fund shall be less than the amount originally established because the income during the period of public management and operation has been insufficient to pay the cost of the service, the commonwealth shall forthwith pay over to the company an amount sufficient to restore it to its original amount and if the amount in said reserve fund is then in excess of the amount originally established and any amount required to meet the cost of the service to the expiration of such period, such excess shall be paid into the treasury of the commonwealth and distributed among the cities and towns in which the company operates in the same proportions as the assessments provided for by section fourteen.

Section 14. In case the commonwealth shall be called upon to pay to the trustees or the company any amount under the provisions of sections eleven and thirteen, such amount with interest or other charges incurred in borrowing money for the purpose shall be assessed upon the cities and towns in which the company operates by an addition to the state tax next thereafter assessed in proportion to the number of persons in said cities and towns using the service of the company at the time of said payment, said proportion to be determined and reported to the treasurer and receiver general by the trustees from computations made in their discretion for the purpose.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

Section 18. \* \* \* None of the provisions of this act shall be construed to constitute a contract binding upon the commonwealth other than the provisions which define the terms and conditions under which, during the period of public management and operation, the property owned, leased or operated by the Boston Elevated Railway Company shall be managed and operated by the said trustees, and the provisions of section thirteen, which provisions shall constitute a contract binding upon the commonwealth. But if during said period of management and operation the trustees shall be deprived of the possession or control of said property by reason of any action to enforce any debt, claim or obligation which existed at the time the trustees took possession, the commonwealth shall be under no obligation to pay any sum or sums under this act to meet any deficiency in income accruing while the trustees are deprived of such possession and control. (Special Acts, 1918, ch. 159. Italics supplied.)

Following the enactment of the above special act, the Supreme Judicial Court of Massachusetts advised the Senate of the Commonwealth, in answer to certain questions, that the act was constitutional as dealing with a matter of public interest, the means of transportation for the public at large. In the course of the opinion, the court said:

\* \* \* In essence Special Acts 1918, c. 159, was a legislative agreement for the lease to the commonwealth of a public utility to be operated for a limited time by public officers upon the payment of fair rental on an investment made under public supervision and under laws prohibiting stock watering or other means of inflation.

We are led to the conclusion that said chapter 159 was within the constitutional power of the Legislature. (*In re: Opinion of the Justices*, 231 Mass. 603; 122 N. E. 763, 765.)

In 1921 the same court, in *City of Boston* v. *Treasurer and Receiver General*, 237 Mass. 403; 130 N. E. 390, again affirmed the constitutionality of the act, first saying:

 In an opinion of the Justices given to the Honorable Senate, and reported in 231 Mass. 603, 122 N. E. 763, the view has expressed that Sp. St. 1918, c. 159 violated no provision of the State or federal Constitution. The familiar rule is that such opinions are wholly advisory, given by the Justices as individuals without the benefit of argument, and are not decisions of the court. When the questions therein considered arise in the course of litigation, the ground is reexamined by the Justices sitting as a court in the light of the arguments presented and with the effort carefully to guard against any influence flowing from the earlier opinion.

At another point in the opinion the court said:

Some analysis of the provisions of Sp. St. 1918, c. 159, is necessary in order to deal with the contentions that it is unconstitutional. Its general scope is indicated by its title, which is, "An act to provide for the public operation of the Boston Elevated Railway Company." The accuracy of the title is confirmed by the substance of the act throughout. Its purpose is operation through public officers and not public ownership. * * * .

See also *City of Chelsea* v. *Treasurer and Receiver General*, 237 Mass. 422; 130 N. E. 397.

The case of *City of Boston* v. *Treasurer and Receiver General*, *supra*, was taken on writ of error to the Supreme Court of the United States. *Boston* v. *Jackson*, 260 U. S. 309. The Supreme Court affirmed the judgment of the Massachusetts court and in the course of the opinion Mr. Chief Justice Taft said:

What the Commonwealth did was to help the people of the towns which the railway served when the railway's finances threatened its collapse, by taking over the lease of the company for a valuable consideration. There was no restriction upon the power of the railway company to assign the lease if the company had the corporate power and that, if it did not exist before, was supplied by the act itself. The law provided for keeping the property in good repair, and the payment of the rentals due the city. There was nothing in the contract of assignment which in the slightest degree impaired the obligation of the company to the city under the lease. Indeed, it secured the performance of those obligations.

But it is said the contract was impaired because the act provided that any deficit incurred in the operation of the road under the assignment was to be paid out of the Treasury of the Commonwealth and finally was to be collected in large part from the city of Boston, and thus that though Boston was to receive its rental it was required to pay a deficit in operation into which the rental must enter as an important factor. The effect, therefore, was to take away or impair its beneficial interest in the profits of the contract of lease and its property. To this the Supreme Court answered that this tax was not imposed on Boston in its proprietary capacity in which it built the subways and leased them. The taxes collected were State taxes to achieve a state purpose

and Boston in its public and political character was a mere state tax agency for the collection. The taxpayers were to be called upon to bear the burden of the public purpose of the State in furnishing this important service of transportation in and between the communities in which they lived. If this was in accord with the State constitution and statutes, as we must and do find it to be from the well-reasoned opinion of the Supreme Judicial Court, we cannot see that in any respect the levy of the tax for deficits impairs Boston's contract with the railway company.

In disposing of this objection we have in effect disposed of those objections to the Act of 1918, based on the 14th Amendment. If the constitution and laws of Massachusetts authorize the Commonwealth to operate a railway company for the public benefit, there is nothing in the 14th Amendment to prevent. Nor is there anything in it preventing the State from using the trustees as agents to operate the railway and in such operation to determine the needed expenditures to comply with the obligations of the lease or the requirements of adequate public service. This is delegating to proper agents the decision of a proper administrative policy in the management of a State enterprise and the ascertainment of facts peculiarly within the field of authorized action. In this conclusion, we assume, as did the Supreme Judicial Court, that the State may confer on one of its subdivisions like a city or town the private proprietary capacity by which it may acquire contract or property rights protected by the Federal Constitution against subsequent impairment by its creator the State. *Mt. Hope Cemetery* v. *Boston*, 158 Mass. 509. We do not wish to be understood as accepting such assumption as an established rule. *Pawhuska* v. *Pawhuska Oil and Gas*, 250 U. S. 394. All we now decide is that even if the City of Boston may invoke the contract clause of the Federal Constitution to protect its rights under the lease as against infringing legislation by the commonwealth, the Act of 1918 does not infringe.

More recently, on November 22, 1927, the Justices of the Supreme Judicial Court of Massachusetts have had occasion to again consider the Act of 1918 in connection with legislation proposed to extend the term of the lease of the Boston Elevated properties and, in the course of an opinion to the Senate of the Commonwealth, it was said:

*Provision was made by said c. 159 for the public operation through a board of trustees, appointed by the Governor, of the Boston Elevated Railway Company for a period of ten years and thereafter until such time as the Commonwealth shall elect to discontinue public management. That statute was in substance and effect a lease of the property of the railway company to the Commonwealth upon the terms therein specified.* The validity of said c. 159 was upheld against attacks, founded upon certain of its provisions alleged to violate the Constitution, in *Boston* v. *Treasurer & Receiver General*, 237 Mass. 403, affirmed in 260 U. S. 309, and in *Chelsea* v. *Treasurer & Receiver General*, 237 Mass. 422. See *Opinion of the Justices*, 231 Mass. 603. The conclusions there reached are accepted without further discussion.

The first three questions of the present order raise the point broadly whether the Commonwealth may guarantee the payment of principal and interest of any securities of the Boston Elevated Railway Company which the trustees may issue under the authority of the proposed bill for the purpose of effecting economies in the fiscal management of the company and of promoting its more efficient service. Public money cannot be appropriated or public credit lent for the aid of private objects or enterprises. Such expenditures can be made

**712**

only for public purposes and to promote the general welfare. That is too clear for discussion. *Lowell* v. *Boston,* 111 Mass. 454. *Duffy* v. *Treasurer & Receiver General,* 234 Mass. 42, 50. *Opinion of the Justices,* 240 Mass. 616, 617. The Boston Elevated Railway is devoted to a public use and its operation and management concern the public welfare. The transportation of the people at large in the district served by the Boston Elevated Railway system is a matter in which the public and the government as the representative of the people have an interest. *Boston* v. *Treasurer & Receiver General,* 237 Mass. 403, 414, and cases there collected. *Boston & Albany Railroad* v. *New York Central Railroad,* 258 Mass. 600. *Prince* v. *Crocker,* 166 Mass. 347. *Browne* v. *Turner,* 176 Mass. 9. *Sears* v. *Street Commissioner of Boston,* 180 Mass. 274, 279. *The trustees take and have possession of the properties of the Boston Elevated Railway Company " in behalf of the Commonwealth during the period of public operation" by the express terms of said c. 159 § 2. The operation and management of the Boston Elevated Railway Company during the term of the lease are to be by a board of public officers for the promotion of the general welfare,* although at the same time provision is made for the conservation of the private interests of the owners of the railway company. The Commonwealth, having taken possession of the property of the railway company for a public use, can expend public money for its support and operation. It follows that the purposes of the guarantee of the securities described in question 1 are public as distinguished from private, and that public moneys may be expended and the public credit pledged therefor.

It is provided by art. 62, § 1. of the Amendments to the Constitution that the " credit of the commonwealth shall not in any manner be given or loaned to or in aid . . . of any corporation which is privately owned and managed." Under said c. 159, as amended by the proposed bill, the Boston Elevated Railway Company, although privately owned, will not be privately managed. *On the contrary, it is to be managed, controlled and operated wholly by the board of trustees who are appointed by the Governor, who constitute a public board, who are for all essential purposes public officers although under said c. 159, § 2, " deemed to be acting as agents of the company and not of the commonwealth," and whose duties are prescribed by a public statute enacted by the General Court pursuant to its constitutional prerogatives.*

*The provision of § 1 of the proposed act, to the effect that the trustees shall not be considered public officers within the meaning of G. L. c. 271, § 40, does not impair or affect the general nature of their duties as public officers. The further provision exempting the trustees from the terms of G. L. c. 12, § 3, has no bearing upon the character of their service as public officers. For all other purposes they are public officers. They perform public functions.*

The further provisions of § 3 of the proposed bill, to the effect that no contracts of the trustees for the operation or lease of additional subways, elevated or surface lines, or any extensions thereof, involving payment of rental or other compensation beyond the period of public operation shall be valid without the consent of the directors of the company, and that extensions or purchases of surface lines in certain conditions may not be made without such consent, do not affect the dominating features of the proposed bill stamping the management and operation of the corporation as public and not private. It is expressly provided by said c. 159 § 4, that during the period of public control the board of directors of the company shall " have no control over the management and operation of the street railway system." *The entire responsibility of management and operation rests upon the trustees as public officers.* This responsibility is not shared with the directors of the railway company.

Section 25 of Chapter 514 of the Acts of 1909 (G. L. ch. 271, sec. 40) is a criminal statute prohibiting any public officer from recommending the employment or discharge of any person seeking employment or employed by public service companies. Section 1 of chapter 7 of the Revised Laws (G. L. ch. 12, sec. 3) provides for the appearance by the Attorney General of the Commonwealth in all cases where the official acts of state departments, officers or commissions are called into question. In our opinion the provisions in the special act of 1918 to the effect that the trustees should not be considered to be public officers within the meaning of section 25 or exempting them from the provisions of section 1, are not conclusive of the question as to whether they are public officers of the Commonwealth of Massachusetts in the broader sense. It is true that the provisions of the special act of 1918 were considered in *Boston Elevated Railway* v. *Malley*, 288 Fed. 864, to constitute the trustees "agents of the company and not public officers" but it must be remembered that in that case, as in *Boston Elevated Railway* v. *Mitchell*, 24 Fed. (2d) 758, decided March 6, 1928, where similar language is used, the question was one of taxation of the Boston Elevated Railway Co. and a decision as to the status of the trustees was not necessary. On the contrary, when the question as to the status of the trustees was squarely raised, the Justices of the Supreme Judicial Court of Massachusetts were of the opinion that the trustees were public officers for all other purposes than those excluded. In the opinion of November 22, 1927, the justices were considering the provisions of article 62, section 1, of the amendments to the Constitution of Massachusetts, where it was provided that:

The credit of the Commonwealth shall not in any manner be given or loaned to or in aid of any corporation which is privately owned and managed.

The Senate asked whether the Commonwealth by amendment to the Public Control Act, could constitutionally guarantee the payment of principal and interest of securities of the Boston Elevated Railway which the trustees might issue under the authority of the proposed amendment. The justices were of the opinion that it could, for reasons quoted above, and said:

In these circumstances there is nothing in art. 62 of the Amendments to the Constitution which would be violated by the guarantee by the Commonwealth of securities issued by the trustees as authorized in the proposed bill.

They said further:

Such delay does not in any particular affect the underlying facts that, at the time the public credit was pledged, *public officers were the managers of the Boston Elevated Railway Company and the funds secured by such pledge of the public credit have been expended wholly for a public purpose under the direc-*

*tion of public officers.* These are decisive factors under Art. 62 of the Amendments. (Italics supplied.)

We are led to the inescapable conclusion that the petitioners are officers of the Commonwealth of Massachusetts. In view of section 1211 of the Revenue Act of 1926 which makes that the test of exemption, we do not deem it necessary to discuss the question as to whether the services performed by the trustees are essentially governmental or not. As we construe section 1211, that question need not be answered if the petitioners are receiving amounts " as compensation for personal services as an officer ·or employee of any State." We see no escape from holding that the salaries of the petitioners were so received and we, therefore, hold that such salaries are exempt from tax.

Reviewed by the Board.

> *Judgment will be entered for the petitioners in Docket Nos. 11556, 12498, 28049, 17002, 12944, 12945, 17856, 30377 and 11558. Judgment will be entered under Rule 50, in Docket No. 15996.*

ARUNDELL dissents.