LELAND POWERS, EXECUTOR OF THE ESTATE OF SAMUEL L. POWERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

STANLEY R. MILLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WINTHROP COFFIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HENRY I. HARRIMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 47836, 48007, 50575, 51029, 61846. Promulgated October 27, 1932.

*Melville F. Weston*, Esq., and *Stanley R. Miller*, Esq., for the petitioners.
*Harold Allen*, Esq., for the respondent.

1382

OPINION.

SMITH: In *Winthrop Coffin*, 12 B. T. A. 702, this Board held that compensation paid to trustees of the Boston Elevated Railway Company in the years 1920 to 1923, inclusive, was exempt from the Federal income tax. We there considered this issue solely from the standpoint of whether the taxpayers were officers of the Commonwealth of Massachusetts. After a full consideration of the legislation creating the board of trustees for the operation of the Boston Elevated Railway Company and pertinent court decisions relating thereto, we said:

We are led to the inescapable conclusion that the petitioners are officers of the Commonwealth of Massachusetts. In view of section 1211 of the Revenue Act of 1926, which makes that the test of exemption, we do not deem it necessary to discuss the question as to whether the services performed by the trustees are essentially governmental or not. As we construe section 1211, that question need not be answered if the petitioners are receiving amounts "as compensation for personal services as an officer or employee of any State." We see no escape from holding that the salaries of the petitioners were so received and we, therefore, hold that such salaries are exempt from tax.

The respondent now contends that although the petitioners were officers of the Commonwealth of Massachusetts, the compensation they received as members of the board of trustees of the Boston Elevated Railway Company is, nevertheless, subject to the Federal income tax, since their duties did " not involve the exercise of an

1386

essentially governmental function," citing *Flint v. Stone Tracy Co.*, 220 U. S. 107. See also article 88 of Regulations 69, and article 643 of Regulations 74.

On brief, the petitioners call attention to the fact that neither the Revenue Act of 1926 nor the Revenue Act of 1928 contains an express provision with respect to this type of exemption, which the Commissioner's regulations purport to limit to the compensation for services rendered " in connection with the exercise of an essential governmental function."

The petitioners contend that the public operation of the Boston Elevated Railway Company was not the exercise of a proprietary right, but of an essential governmental function; that in any event the board of trustees was a special public service commission for that railway, and, as such, engaged in an essential governmental function; and, further, that the taxation of the compensation here involved " constitutes an undue interference with the workings of the State Government."

The Supreme Court recently considered the question of tax exemption of instrumentalities of the Federal Government and, in *Fox Film Corp.* v. *Doyal*, 286 U. S. 126, said:

> The principal of the immunity from state taxation of instrumentalities of the Federal Government, and of the corresponding immunity of state instrumentalities from Federal taxation—essential to the maintenance of our dual system—has its inherent limitations. It is aimed at the protection of the operations of government (*McCulloch* v. *Maryland*, 4 Wheat. 316, 436), and the immunity does not extend " to anything lying outside or beyond governmental functions and their exertions." *Indian Motorcycle Co.* v. *United States*, 283 U. S. 570, 576, 579. Where the immunity exists, it is absolute, resting upon an " entire absence of power " (*Johnson* v. *Maryland*, 254 U. S. 51, 55, 56), but it does not exist " where no direct burden is laid upon the governmental instrumentality, and there is only a remote, if any, influence upon the exercise of the functions of government." *Willcuts* v. *Bunn*, 282 U. S. 216, 225.

In *Group No. 1 Oil Corp.* v. *Bass*, 283 U. S. 279; 51 Sup. Ct. 432, 433, the Supreme Court pointed out that the immunity there contended for and applicable here did not extend to a " nondiscriminatory tax " imposed by one government that remotely and indirectly affects another government.

The principle of immunity referred to in *Fox Film Corp.* v. *Doyal, supra*, had its genesis in *McCulloch* v. *State of Maryland*, 4 Wheat. 316, wherein the Supreme Court held unconstitutional a discriminatory tax laid by the State of Maryland " on all Banks or Branches thereof in the State of Maryland, not chartered by the Legislature." The facts of that case are too familiar to require further recital here. The principle there established has received elucidation by the Supreme Court in recent tax cases in which it has reconsidered the principle of immunity and the nature of " its

inherent limitations." See *Fox Film Corp.* v. *Doyal, supra; Group No. 1 Oil Corp.* v. *Bass, supra; Indian Motorcycle Co.* v. *United States*, 283 U. S. 570; 51 Sup. Ct. 601; *Burnet* v. *Coronado Oil & Gas Co.*, 285 U. S. 393; 52 Sup. Ct. 443.

There is no discrimination in the imposition of the tax in controversy, which is laid upon the net income of individuals, determined after certain credits and deductions from gross income, which includes " gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid." Sections 210 to 213 of the Revenue Act of 1926, and sections 11, 12, 21, and 22 of the Revenue Act of 1928. And, as the Supreme Court said in *Willcuts* v. *Bunn*, 282 U. S. 216; 51 Sup. Ct. 125, 129:

* * * It must be remembered that we are dealing, not with any express constitutional restriction, but only with an asserted implication. The constitutional provisions authorizing the Congress to lay taxes (article 1, § 8, Sixteenth Amendment) are certainly broad enough to cover the tax in question * * *.

Tax exemptions are never lightly to be inferred (*Heiner* v. *Colonial Trust Co.*, 275 U. S. 232), must be given a practical construction such " as will not unduly impair the taxing power " of the Federal Government " or the appropriate exercise of its functions " by the State government (*Susquehanna Co.* v. *Tax Commission*, 283 U. S. 291, 294); and the constitutional exemption, if any, must be construed strictly against the taxpayer (*Pacific Co.* v. *Johnson*, 285 U. S. 480). The exemption claimed in the instant proceedings, since there is no express statutory provision therefor, can not be determined " apart from the purpose and character of the legislation " by which the Commonwealth of Massachusetts undertook the operation of the Boston Elevated Railway Company through a board of trustees, of which the petitioners were members. Cf. *Shaw* v. *Oil Corporation*, 276 U. S. 575, 578.

In *Winthrop Coffin, supra*, we found that the trustees of the Boston Elevated Railway Company were officers of the Commonwealth of Massachusetts, despite the provisions of section 1 of chapter 159 of the Special Acts of 1918, which declared that the trustees " shall not be considered public officers." This conclusion was based upon other provisions of the act than section 1, and upon the interpretations placed thereon by the Supreme Court of Massachusetts. That determination is not dispositive of the issue now before us, since there the exemption claimed was found to be within section 1211 of the Revenue Act of 1926, which has no application to the years now in controversy. In section 2 of chapter 159 of the Special Acts of 1918, it is provided that the trustees " shall be deemed to be acting as agents

of the company and not of the Commonwealth" and that the company remained liable for their acts just as if they were in the immediate employ of the company. In the opinion of the justices of the Supreme Judicial Court of Massachusetts, rendered April 2, 1919, and reported at 231 Mass. 603; 122 N. E. 763, 765, is the following:

* * * In essence Special Acts 1918, c. 159, was a legislative agreement for the lease to the commonwealth of a public utility to be operated for a limited time by public officers upon the payment of fair rental on an investment made under public supervision and under laws prohibiting stock watering or other means of inflation.

We are led to the conclusion that said chapter 159 was within the constitutional power of the Legislature.

In interpreting the provision of chapter 159 under which the trustees apportioned the amount to be assessed against certain cities and towns served by the railway and collected from such cities and towns as an addition to the state tax assessed, the Supreme Court of Massachusetts, in *City of Boston* v. *Treasurer and Receiver General*, 237 Mass. 403; 130 N. E. 390, affirmed its earlier opinion regarding chapter 159 of the Special Acts of 1918, and held constitutional section 14 of the act by which the deficiency in the earnings under sections 11 and 13 were assessed against the cities and towns served by the railway. In the course of that opinion the court said:

Some analysis of the provisions of Sp. St. 1918, c. 159, is necessary in order to deal with the contentions that it is unconstitutional. Its general scope is indicated by its title, which is, "an act to provide for the public operation of the Boston Elevated Railway Company." The accuracy of the title is confirmed by the substance of the act throughout. Its purpose is operation through public officers and not public ownership. * * *

The court also stated that the Commonwealth had the constitutional power to assume the management and operation of the Boston Elevated Railway Company. But nowhere does the court undertake to say that the Commonwealth of Massachusetts was thereby engaged in an essential governmental function, although it upheld the tax levied under section 14 of the act on the grounds that the tax was levied for a public purpose. See also *City of Chelsea* v. *Treasurer and Receiver General*, 237 Mass. 422; 130 N. E. 397; *Boston* v. *Jackson*, 260 U. S. 309. In the opinion of the justices, rendered November 22, 1927, and reported at 159 N. E. 70, it appears that the corporate entity remained intact and that the property remained the property of the Boston Elevated Railway Company.

In January, 1925, the justices of the Supreme Judicial Court of Massachusetts rendered an opinion, reported at 148 N. E. 889, 891, pointing out that the Commonwealth or local government had the power to acquire or construct instrumentalities for public travel and

to charge toll, rental, or other recompense therefor (citing *Commonwealth* v. *Wilkinson*, 16 Pick. 175) ; such powers resting on the rights of the Commonwealth as proprietor of the instrumentalities used. Thus, it appears that in the opinion of the justices, rendered in connection with a question involving certain tunnels constructed by the city of Boston and leased to the Boston Elevated Railway Company, such instrumentalities are constructed and operated in the exercise of a proprietary right. Furthermore, regardless of the operation of the railway by the Commonwealth, the Supreme Court of Massachusetts has held the Boston Elevated Railway Company liable for damages during this period of operation. See *Harter* v. *Boston Elevated Ry. Co.*, 156 N. E. 543.

From a consideration of the above opinions pertaining to the legislation by which the Commonwealth of Massachusetts took over the operation of the Boston Elevated Railway, we conclude that chapter 159 of the Special Acts of 1918 was for a " public purpose " (which term is not synonymous with " governmental purpose," see *T. P. Wittschen*, 25 B. T. A. 46, 52), and for the time provided deprived the private corporation of the exercise of its proprietary rights and gave them to the board of trustees.

In *Flint* v. *Stone Tracy Co.*, *supra*, the question of tax exemption was reviewed at length and governmental agencies and functions fully discussed. The Supreme Court, in considering the question of exemption as it related to public service corporations, to wit, two rapid transit corporations comparable to the Boston Elevated Railway Company, said :

* * * In the case of *South Carolina* v. *United States*, 199 U. S. 437, 50 L. ed. 261, 26 Sup. Ct. Rep. 110, 4 A. & E. Ann. Cas. 737, this court held that when a state, acting within its lawful authority, undertook to carry on the liquor business, it did not withdraw the agencies of the state, carrying on the traffic, from the operation of the internal revenue laws of the United States. If a state may not thus withdraw from the operation of a Federal taxing law a subject-matter of such taxation, it is difficult to see how the incorporation of companies whose service, though of a public nature, is nevertheless, with a view to private profit, can have the effect of denying the Federal right to reach such properties and activities for the purposes of revenue.

It is no part of the essential governmental functions of a state to provide *means of transportation*, supply artificial light, water, and the like. These objects are often accomplished through the medium of private corporations, and though the public may derive a benefit from such operations, the companies carrying on such enterprises are nevertheless private companies, whose business is prosecuted for private emolument and advantage. For the purpose of taxation they stand upon the same footing as other private corporations upon which special franchises have been conferred.

The true distinction is between the attempted taxation of those operations of the states *essential* to the execution of its governmental functions, and which

the state *can only do itself*, and those activities which are of a private character. The former, the United States may not interfere with by taxing the agencies of the state in carrying out its purposes; the latter, although regulated by the state, and exercising delegated authority, such as the right of eminent domain, are not removed from the field of legitimate Federal taxation. [Italics supplied.]

The petitioners rely upon the decision of the Circuit Court of Appeals for the First Circuit in *Jamestown & Newport Ferry Co.* v. *Commissioner*, 41 Fed. (2d) 920, wherein the Ferry Company was held to be an instrumentality of government and not subject to the Federal income tax. That case is distinguishable from the proceedings at bar in that there the income from a public utility (the ferry), accrued to a political subdivision of a state and was specifically exempted from Federal taxation by section 213 (b) (7) of the Revenue Acts of 1921 and 1924. There, the ferry corporation was owned and operated by a town located on an island. Likewise, the decision of the Circuit Court of Appeals for the Ninth Circuit in *United States* v. *King County, Wash.*, 281 Fed. 686, is cited and relied upon. There, the county owned and operated a ferry, which the court held exempt from the transportation tax imposed by section 500 of the Revenue Act of 1917. In both cases, there was a direct burden upon or interference with a political subdivision of a state. Likewise, the decision of the District Court for the Eastern District of Michigan in *Frey* v. *Woodworth*, 2 Fed. (2d) 725, is distinguishable in that the exemption granted applied to the income of an employee of a municipally owned and operated street railway. The District Court relied upon the earlier decision in *United States* v. *King County, Wash., supra*, from which it construed the ownership and operation of the street railway system by the city of Detroit to be the exercise of a strictly governmental function. The record discloses that the Boston Elevated Railway continued to be owned by the private corporation and that at no time did the Commonwealth of Massachusetts own the railway; thus, in this particular, if in no other, the instant proceedings are distinguishable from those cases relied upon by the petitioners.

Contrasted to the decisions cited by the petitioners, involving ferries and street railways owned and operated by political subdivisions of a state, are the decisions of the District Court, District of Massachusetts, involving the Boston Elevated Railway Company. That court held, in *Boston Elevated Ry. Co.* v. *Malley*, 288 Fed. 864 (1923), that the railway was subject to the 3 per cent transportation tax imposed by section 500 of the Revenue Act of October 3, 1917; and, in *Boston Elevated Ry. Co.* v. *Malley*, 24 Fed. (2d) 758 (1928), that it was subject to the capital-stock tax imposed by section 1000

(a) (1) of the Revenue Act of 1918, while being operated under chapter 159, Special Acts of 1918, by the board of trustees therein provided. In the first case, the court pointed out that the tax was not paid by the Commonwealth of Massachusetts, and in the latter it said:

It should perhaps be noticed that the special act reserved to the commonwealth and its subdivisions the right " to tax the company or its stockholders in the same manner and to the same extent as if the company had continued to manage and operate its own property." Section 2. It would be a curious arrangement under which the corporation continued to be fully taxable as such for the benefit of the commonwealth, while it escaped taxation by the federal government.

The petitioners further argue that in substance the board of trustees of the Boston Elevated Railway Company constituted a special public service commission for the Boston Elevated Railway, and, as such, they were engaged in an essential governmental function, to wit, regulating the operations of such railway, citing *Burnet* v. *Livezey*, 48 Fed. (2d) 159. After the enactment of chapter 159 of Special Acts of 1918, the Public Service Commission of the Commonwealth of Massachusetts continued its functions and duties with respect to public utilities other than the Boston Elevated Railway; thereafter, pursuant to the statute, that railway was operated by the trustees, who at all times acted as " agents of the company and not of the Commonwealth " (section 2, chapter 159, Special Acts of 1918); public regulation abdicated in favor of public operation, and thereafter public regulation was restricted in the manner provided in section 15 of chapter 159, which perhaps was an inducement to the private corporation to subject its property to public operation, during and after which the stockholders of the private corporation were assured a fixed return upon their investment. *Burnet* v. *Livezey*, *supra*, held that an attorney for the Public Service Commission of the State of West Virginia was employed by an agency of the state performing governmental functions and that his income was exempt from Federal taxation. Here, these petitioners were not members of the Public Service Commission of Massachusetts, nor were they employed by such Commission. The functions of regulation that they exercised were incidental to the public operation. Furthermore, *Burnet* v. *Livezey* arose under section 1211 of the Revenue Act of 1926 as applied to the taxable year 1923. Contrast with that decision the holdings in *Blair* v. *Byers*, 35 Fed. (2d) 326, and *T. P. Wittschen*, *supra*.

In *Leon S. Moisseiff*, 21 B. T. A. 515, this Board held that the Delaware River Bridge Joint Commission created by legislative enactments of the States of Delaware and Pennsylvania, and the

1392

Port of New York Authority, similarly created by legislative enactments of the States of New York and New Jersey, were governmental instrumentalities and that the compensation paid to an employee thereof was exempt from Federal income tax. In that case, the instrumentalities employed by the states concerned were engaged in providing bridge facilities in furtherance of commerce, and making harbor improvements in aid of navigation, and in so doing did not merely take over and operate a private corporation, as in the instant proceedings. In the case of the States of New York and New Jersey, the legislatures thereof expressly provided that the Port Authority be regarded as performing a governmental function (see page 526); the same inference is drawn from the legislation creating the Delaware River Bridge Joint Commission. Neither enterprise was carried out by the public operation of private property, as in the instant proceedings. Obviously, therefore, that case is not authority for holding tax exempt the income of these petitioners.

The record discloses that the compensation of these petitioners as trustees was paid neither directly nor indirectly by the Commonwealth of Massachusetts. The salaries in question were paid by the Boston Elevated Railway Company, and it was only in the event of the unsuccessful operation of the railway that the Commonwealth would be called upon to contribute any sum toward the expense of the railway. It appears that over $3,000,000 was advanced by the Commonwealth of Massachusetts in 1919 for this purpose, but that the operations of subsequent years, and particularly the taxable years under consideration, were successful and in some measure the Commonwealth was reimbursed for the amount advanced in 1919. In this particular, the instant proceedings are distinguishable from the situation involved in *Biscoe* v. *Tax Commissioner*, 236 Mass. 201; 128 N. E. 16, wherein there was no decision on the question of an essential governmental function, but where the Supreme Court of Massachusetts held that compensation received by a Federal manager and a solicitor of railways, under the supervision of the Director General of Railroads during the period of Federal control, was exempt from the Massachusetts State income tax imposed by chapter 269 of the Statutes of 1916, which in section 5 (b) specifically exempted the salaries of employees and officers of the United States Government. It appears that the monies out of which the compensation was paid were so handled as to become the monies of the United States Government and that the taxpayers' compensation was paid by voucher drawn either directly or indirectly upon the Federal Government. The facts in the instant proceedings are

vitally different. The test applied by the Massachusetts statute was met in *Biscoe* v. *Tax Commissioner*, *supra*, whereas the test applicable in the instant proceedings has not been met.

From a full consideration of the facts of record in the light of the recent decisions of the Supreme Court, we are of the opinion that the compensation received by these petitioners, as trustees of the Boston Elevated Railway Company, from the company in the years 1926 to 1929, inclusive, is subject to the Federal income tax asserted by the respondent. These petitioners were engaged in the public operation of private property, as agents of a private corporation, the stockholders of which were assured a fixed return upon their investment during and after public operation, and the railway at all times continued subject to taxation and liable for the acts of its agents. Although public officials, as that term has been liberally interpreted, they were not exercising essential governmental functions in the performance of their duties. The taxation of the compensation in question places no burden upon the Commonwealth of Massachusetts and there is no interference with any essential governmental function of that Commonwealth.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

MURDOCK and GOODRICH concur in the result.