T. P. WITTSCHEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39633. Promulgated December 31, 1931.

*T. P. Wittschen, Esq.,* pro se.
*J. E. Marshall, Esq.,* for the respondent.

OPINION.

McMahon: In the petition in this case it was alleged in the fifth paragraph, among other things, that the petitioner was an officer of the East Bay Municipal District and the district was a political subdivision of the State of California engaged in governmental functions. The respondent in his answer admitted all the allegations of the fifth paragraph except that the East Bay Municipal Utility District was a political subdivision of the State of California engaged in governmental functions, which was denied.

The only question raised by the pleadings therefore is whether the district was a political subdivision of the State engaged in governmental functions.

The principle that the Federal Government cannot tax the means and instrumentalities of the States was enunciated in *Collector* v. *Day*, 11 Wall. 113. The rule, however, is restricted to those cases in which the State through the instrumentalities and political subdivisions is performing a governmental function, which as applied to the judicial department or function of the States is said to be in the opinion in that case " one of the sovereign powers vested in the states by their constitutions, which remain unaltered and unimpaired, and in respect to which the state is as independent of the general government as that government is independent of the states," and that " all of the thirteen states were in possession of this power, and had exercised it at the adoption of the constitution."

In *Veazie Bank* v. *Fenno*, 8 Wall. 533, it is stated:

* * * that the reserved rights of the states, such as the right to pass laws, to give effect to laws through executive action, to administer justice through the courts, and to employ all necessary agencies for legitimate purposes of state government are not proper subjects of the taxing power of congress.

In *South Carolina* v. *United States*, 199 U. S. 437, it is stated:

* * * The exemption of the State's property and its function from Federal taxation is implied from the dual character of our Federal system and the necessity of preserving the State in all its efficiency. In order to determine to what extent that implication will go *we must turn to the condition of things at the time the Constitution was framed.* What, in the light of that condition, did the framers of the convention intend should be exempt? [Italics ours.]

The expansion and enlargement of state control and enterprise has been deemed necessary by the needs of advancing civilization.

State governments have taken an active part in promoting and developing their own resources, in assisting and aiding their citizens commensurate with public welfare and higher standards of living, and in creating organizations to carry out such purposes. However, as the operations of the States progressed and enlarged and the right to tax its citizens for the carrying on of such activities was upheld by the courts as being levied for a public purpose, this did not effect a corresponding decrease of or limitation upon the taxing power of the Federal Government.

The court, in *South Carolina* v. *United States, supra,* it seems to us, fully recognized the imperilment of the powers of taxation of the Federal Government by such activities of the States, if such be deemed governmental, in the following language:

* * * Each State is subject only to the limitations prescribed by the Constitution and within its own territory is otherwise supreme. Its internal affairs are matters of its own discretion * * *. Mingling the thought of profit with the necessity of regulation may induce the State to take possession, in like manner, of tobacco, oleomargarine, and all other objects of internal revenue tax. If one State finds it thus profitable other States may follow, and the whole body of internal revenue tax be thus stricken down.

More than this. There is a large and growing movement in the country in favor of the acquisition and management by the public of what are termed public utilities, including not merely therein the supply of gas and water, but also the entire railroad system. * * *

We may go even a step further. There are some insisting that the State shall become the owner of all property and the manager of all business. Of course, this is an extreme view, but its advocates are earnestly contending that thereby the best interests of all citizens will be subserved. If this change should be made in any State, how much would that State contribute to the revenue of the Nation? If this extreme action is not to be counted among the probabilities, consider the result of one much less so. Suppose a State assumes under its police power the control of all those matters subject to the internal revenue tax and also engages in the business of importing all foreign goods. The same argument which would exempt the sale by a State of liquor, tobacco, etc., from a license tax would exempt the importation of merchandise by a State from import duty. * * *

Obviously, if the power of the State is carried to the extent suggested, and with it is relief from all Federal taxation, the National Government would be largely crippled in its revenue. Indeed, if all the States should concur in exercising their powers to the full extent, it would be almost impossible for the Nation to collect any revenues. In other words, in this indirect way it would be within the competency of the States to practically destroy the efficiency of the National Government. * * *

    *        *        *        *        *

It is true that some cases may hold that the purpose and intention to earn a profit is one of the distinctions between a private and public or municipal corporation. Nevertheless, when governments undertake enterprises which have been and could be carried out by private corporations, profit is an important consideration, the difference

being that the profit goes to the inhabitants in increased value of property and to the consumer in prices at cost, while in a private corporation, the profits are distributed to stockholders. No one can deny that the wealth of the state is materially increased by such projects if properly carried out.

To sustain his contention that the district was a political subdivision of the State engaged in governmental functions, the petitioner relies on the case of *Fallbrook Irrigation District* v. *Bradley*, 164 U. S. 112, and on the case of *Houck* v. *Little River Drainage District*, 239 U. S. 254. While it may be conceded that there is some language in these cases apparently sustaining his contention, yet upon a careful examination and analysis of the same we have come to the conclusion that these cases are distinguishable and not controlling in the determination of the question before us.

The language of the court in both cases quoted by the petitioner in his brief as sustaining his contention was used in the discussion and determination of the same question, i. e., whether the purpose of the tax assessed and collected was a public purpose. In the former case the action was commenced to restrain the collector of the irrigation district from giving a deed to the district of the premises belonging to the plaintiff based on the sale of her land made by the collector for the nonpayment of a certain assessment upon such lands under the act incorporating the irrigation district, to set aside such assessment, and for other relief. In the latter case the action was commenced by owners of several thousands of acres embraced within the drainage district to restrain the collection of a tax of 25 cents per acre levied generally upon the lands within the district for the purpose of paying its preliminary expenses. It is stated in volume 1 of Cooley on Taxation (4th ed.) § 87: "It is the first requisite of lawful taxation that the purpose for which it is laid shall be a public purpose."; and in volume 2 of Cooley on Taxation (4th ed.) § 639: "The test of the right to tax is whether the property is devoted to a public use rather than whether it is used for governmental purposes." The terms "public use" or "public purpose," and "governmental use" or "governmental purpose," have been used interchangeably. However, it has been held that such terms are not synonymous. *State of North Dakota* v. *Olsen*, 33 Fed. (2d) 848. When these terms are used interchangeably, the question to be determined must be borne in mind and the language limited in its application to the question involved.

Although "public use" expands with the new needs created by the advance of civilization and although courts have recognized that the definition of "public use" must be such as to give it a degree of elasticity capable of meeting new conditions and improvements and the

ever increasing needs of society, it does not follow that the same degree of elasticity must be given to the definition of "governmental function."

The case of *Jones* v. *City of Portland*, 245 U. S. 217, is, in our opinion, a good illustration of the elasticity accorded to the words "public purpose" or "public use" to validate taxes levied by a municipality. In that case the city of Portland, Me., voted to establish and maintain within its limits a permanent coal and fuel yard for the purposes of selling at cost wood, coal and fuel to its inhabitants and that the money necessary for such purposes be raised by taxation. Certain citizens and taxpayers brought suit to enjoin the establishment of the yard. The Supreme Court of the United States in its opinion quotes from the opinion of the Supreme Court of the State of Maine as follows:

Answering the objection that sustaining the act in question opens the door to the exercise of municipal authority to conduct other lines of business and commercial activity to the destruction of private business, the court said (111 Maine 500):

"But it is urged, why, if a city can establish a municipal fuel yard, can it not· enter upon any kind of commercial business, and carry on a grocery store or a meat market or a bakery. The answer has already been indicated. Such kinds of business do not measure up to either of the accepted tests. When we speak of fuel, we are dealing not with ordinary articles of merchandise for which there may be many substitutes, but with an indispensable necessity of life, and more than this, the commodities mentioned are admittedly under present economic conditions regulated by competition in the ordinary channels of private business enterprise. The principle that municipalities can neither invade private liberty nor encroach upon the field of private enterprise should be strictly maintained as it is one of the main foundations of our prosperity and success. If the case at bar clearly violated that principle, it would be our duty to pronounce the act unconstitutional, but in our opinion it does not. The element of commercial enterprise is entirely lacking. The purpose of the act is neither to embark in business for the sake of direct profits (the act provides that fuel shall be furnished at cost) nor for the sake of the indirect gains that may result to purchasers through reduction in price by governmental competition. It is simply to enable the citizens to be supplied with something which is a necessity in its absolute sense to the enjoyment of life and health, which could otherwise be obtained with great difficulty and at times perhaps not at all, and whose absence would endanger the community as a whole."

\*       \*       \*       \*       \*       \*       \*

In any event we are not prepared to say that when a State authorizes a municipality to tax with a view to providing heat at cost to the inhabitants of the city, *and that purpose is declared by the highest court of the State to be a public one*, the property of a citizen who is taxed to effect such purpose is taken in violation of rights secured by the Constitution of the United States. [Italics ours.]

In this case, as in *Fallbrook Irrigation District* v. *Bradley, supra*, and *Houck* v. *Little River Drainage District, supra*, the Supreme

Court of the United States decided that the tax in question was for a public purpose.

Whatever language may have been used by the courts in the determination of the question whether certain taxation was for a public use or purpose, we do not believe that it was intended to thereby enlarge or increase the reserved rights of the States as embraced within the three fundamental functions of government—legislative, judicial and executive, so that the taxing power of the Federal Government would be seriously hampered and restricted.

The implied prohibition against Federal taxation herein involved, in our opinion, covers only such political subdivisions as are created and organized primarily for governmental purpose. Not being organized primarily for governmental functions, such subdivisions, districts, or organizations for the purpose of Federal taxation must be treated as private corporations. The Supreme Court in *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, stated:

> The cases unite in exemption from Federal taxation the means and instrumentalities employed in carrying on the governmental operations of the State. The exercise of such rights as the establishment of a judiciary, the employment of officers to administer and execute the laws and similar governmental functions cannot be taxed by the Federal Government. *The Collector* v. *Day*, 11 Wall. 113; *United States* v. *Railroad Co.*, 17 Wall. 322; *Ambrosini* v. *United States*, 187 U. S. 1.
>
>    \*      \*      \*      \*      \*      \*      \*
>
> It is no part of the essential governmental functions of a State to provide means of transportation, supply artificial light, water and the like. These objects are often accomplished through the medium of private corporations, and, though the public may derive a benefit from such operations, the companies carrying on such enterprises are, nevertheless, private companies, whose business is prosecuted for private emolument and advantage. For the purpose of taxation they stand upon the same footing as other private corporations upon which specific franchises have been conferred.
>
> The true distinction is between the attempted taxation of those operations of the States essential to the execution of its governmental functions, and which the State can only do itself, and those activities which are of a private character. The former, the United States may not interfere with by taxing the agencies of the States in carrying out its purposes; the latter, although regulated by the State, and exercising delegated authority, such as the right of eminent domain, are not removed from the field of legitimate Federal taxation.
>
>    \*      \*      \*      \*      \*      \*      \*

While the courts of California have used rather broad language in cases involving the question whether taxation by irrigation districts, drainage districts and the like was for a public purpose in order to approve and validate the creation of and provide maintenance for such organizations, the courts have been more circumspect in defining the legal status of such organizations.

In the case of *Bettencourt* v. *Industrial Accident Commission*, 175 Cal. 559; 166 Pac. 323, 324, in determining the status of a reclamation district of California and whether it came within the definition of " employer " as used in the Workmen's Compensation Act of California, to wit: " The state, and each county, city and county, city, school district, and all public corporations therein, and any person, firm, voluntary association, and private corporation (including any public service corporation) who has any person in service," the court in its opinion states as follows:

It is manifest that this definition was advisedly and carefully framed, as much to include those who were meant to be included as to exclude those who were meant to be excluded. The state itself and all its political subdivisions existing at the time the act was adopted are all named. Districts, as such, were necessarily in the minds of the framers of this definition, since a district of a particular kind, namely, a school district, is expressly designated. And to the end that if there should be created by law any new forms, classes, or kinds of " public corporations," there might be no doubt but that they were included, as well as all public corporations which were specifically enumerated, it was in terms added and decreed that all such after-created public corporations came within the definition of employer. But a " public corporation " is a descriptive term not only of well-recognized meaning, but of absolute legal definition. Section 284 of the Civil Code defines public corporations as follows:

" Public corporations are formed or organized for the government of a portion of the state."

Public corporations, therefore, under the controlling definition of the law are those corporations formed for political and governmental purposes and vested with political and governmental powers. There is another class, for convenience of description, called quasi public corporations, and such of those as are engaged in public service are included in this definition to remove the possibility of misunderstanding and contention. But reclamation districts organized as was this petitioner possess no political nor governmental powers, are not organized for political or governmental purposes, and are therefore not public corporations at all. Indeed, they are not in strictness corporations, public or private, but governmental mandatories or agents vested with limited powers to accomplish limited and specific work. Such has been the frequent and unvarying decision of the courts of this state. [Citing numerous cases]. In *People* v. *Reclamation Dist.* No. 551, *supra*, it is said:

\*　　\*　　\*　　\*　　\*　　\*　　\*

" Certainly, these districts were not municipal corporations, as that term is used in the Constitution, and I think it equally clear that they do not belong to any class of corporations defined in the Civil Code. Section 284 reads: ' Corporations are either public or private. Public corporations are formed or organized for the government of a portion of the state. All other corporations are private.' "

\*　　\*　　\*　　\*　　\*　　\*　　\*

Of significance also is the fact that in this state are many districts similar in character to reclamation districts, levee districts, swamp land districts, drainage districts, protection districts no one of which class is enumerated, while school districts are specifically named. Of all such districts and their

characters the Legislature, as it created many and provided for the creation of all, was fully advised, and it appears too plain for discussion that the omission to include these districts was with the design of excluding them. * * *

However, with due respect to such court, it is rather difficult to reconcile all the cases involving the determination of the status of irrigation and similar districts. In the case of *Orosi Public Utility District* v. *McCuaig*, 196 Cal. 43; 235 Pac. 1004 (a proceeding to determine the validity of bonds of the district) the court states as follows:

* * * When related to the class of districts, the cases cited are clearly in point. The improvements contemplated by the acts under which they were formed cannot be considered "municipal purposes." *In re Madera Irrigation Dist.*, 92 Cal. 344, 28 P. 675, 14 O. R. A. 755, 27 Am. St. Rep. 106 (on rehearing). *One of the distinguishing features of such districts is that they are created for the purpose, generally, of some special local improvement,* and may exercise only such powers as may be conferred by the Legislature in the line of the object of their creation. *They are merely special state organizations for state purposes, created to perform certain work which the policy of the state requires or permits to be done, and to which the state has given a certain degree of discretion in making the improvements contemplated.* The other distinguishing feature is that the exactions which such districts may enforce in order to carry out their purposes are in the nature of assessment or taxes for local benefits, to be spread on the property in the districts in proportion to the peculiar advantage accruing to each parcel from the improvement. * * * Districts of the nature just discussed are not municipal corporations in the contemplation of the Constitution. * * * [Italics ours.]

The Orosi Public Utility District was organized under the Public Utility District Act (St. 1921, p. 906), which applies only to unincorporated territory. The Municipal Utility District Act (St. 1921, p. 245), under which the East Bay Municipal Utility District was organized, is similar in nature to the Public Utility District Act except that it applies to incorporated territory alone or in combination with unincorporated territory. *Morrison* v. *Smith Bros.* (Cal.), 293 Pac. 53.

In *Morrison* v. *Smith Bros., supra,* actions were commenced to recover damages for alleged wrongful death of certain named persons. The defendant district was organized under the Municipal Utility District Act, as was the District which petitioner served as attorney. The court discusses at length and quotes the above language in the case of *Orosi Public Utility District, supra.* However, it concludes as follows:

* * * No good reason occurs to us why those districts should be cloaked with the immunity that respondent claims when acting in a purely proprietary capacity; and, in fact, many reasons exist why the same rule that applies to municipal corporations proper should apply to respondent. It would certainly be an anomalous situation if a municipality engaged in a proprietary function, such as running, operating or constructing waterworks, would be liable for

the torts of its agents, but if that same municipality should join with other municipalities and organize a municipal utility district it would thereby immunize itself from all such liability. Such a rule does not appeal to our sense of justice nor to our reason. * * *

The conclusion of the court in the latter case involving a district organized under the same act as the East Bay Municipal Irrigation Company is very pertinent in this proceeding and in particular the observation of the court that it would certainly be an anomalous situation if a municipality engaged in the proprietary function, such as running, operating or constructing waterworks, would be liable for the torts of its agents, but if that same municipality should join with other municipalities and organize a municipal utility district it would thereby immunize itself from all such liability. In this case the court held that a municipal utility district is engaged in proprietary functions and not governmental.

Whatever disagreement and differences there may be in the classification of irrigation and similar districts, the cases are in accord in stating that such districts are organized not for governmental purposes, but for the benefit of certain portions of the State and the inhabitants therein. This is apparent from the context of the organic act itself.

The exemption from Federal taxation of the property, means and instrumentalities of the States is also implied from " the necessity of preserving the State in all its efficiency." That the Federal taxation of the compensation of the petitioner received from the district would in any degree affect the State's governmental efficiency or even its efficiency in developing and improving its resources to the benefit of the State and its inhabitants is so remote as to make extended discussion thereof unnecessary.

In *W. J. Howard*, 10 B. T. A. 62, reversed by the Circuit Court of Appeals for the Fifth Circuit, 29 Fed. (2d) 895; and affirmed by the Supreme Court in *Lucas* v. *Howard*, 280 U. S. 526, the Board said:

* * * The test to be applied is the effect of the particular tax on the functioning of the State government. It does not appear in the present case that the tax served to increase the burdens of the cities or impaired the ability of the cities of Houston, Narasota, and Victoria to procure the service of private individuals for the employment upon which petitioner was engaged or the ability of petitioner to discharge his obligations to them.

As the district in the instant proceeding was not organized as a subdivision of the State primarily for governmental purposes, we hold that it is not engaged in performing essential governmental functions; that the services of petitioner as attorney for such district were not rendered in connection with the exercise of an essential governmental function; and that therefore compensation

**58**

received by the petitioner from such district in payment of his services is not exempt from Federal taxation within the implied prohibition against Federal taxation of compensation of State officers or employees engaged in essential governmental functions or within the provisions of section 1211 of the Revenue Act of 1926. See *Mary W. Niles, Executrix*, 20 B. T. A. 949.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

GOODRICH concurs in the result.