CITIZENS WATER WORKS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 61147, 68579, 73546.   Promulgated October 15, 1935.

*Harry C. Stuttle, Esq.*, and *G. H. Moore, Esq.*, for the petitioner.
*C. A. Ray, Esq.*, for the respondent.

OPINION.

McMAHON: These are proceedings, duly consolidated for hearing and opinion, for the redetermination of deficiencies in income tax for the calendar years 1929, 1930, and 1931 in the respective amounts of $1,721.60, $1,714.95, and $1,394.90.

It is alleged that the respondent erred in " deducting dividends " in the years 1929, 1930, and 1931 in the respective amounts of $17,340, $16,770, and $16,620, and that he erred in failing to hold petitioner exempt from taxation under the provisions of section 103 (14) of the Revenue Act of 1928. These allegations were denied by respondent. The petitioner also maintains that it is exempt from Federal taxation, irrespective of the express statutory exemption, as an instrumentality performing an essential governmental function.

The material facts are not disputed.

The city of Litchfield, Illinois, is a municipal corporation operating under the laws of Illinois. Its population, according to the 1930 census, was about 6,612.

For a time immediately prior to 1925 the city of Litchfield operated its own water system. The water furnished from a reservoir south of the city was muddy and had a bad odor. The residents could not drink this water. Furthermore, this reservoir proved to be inadequate. It frequently went dry. The reservoir was relatively shallow, resulting in a luxuriant aquatic growth which imparted to the water a bitter taste. The water was practically unfit for domestic use and most industrial uses. Water was also obtained from a creek, which was somewhat better, although it was also of a poor quality due to the sluggishness of the stream. Due to aquatic organisms it also had a disagreeable odor and taste. The creek was also quite muddy. The water system then in use was used more generally for flushing water closets and sprinkling lawns. The citizens depended upon wells for most of their domestic water supply including drinking water. Analyses showed that both the well water

and the water from the water system were unfit for human consumption because of pollution. During the time these sources of water supply were in use there were frequent outbreaks of typhoid fever and dysentery contracted at least in part from polluted drinking water. Most of the sewage was not carried away by water or otherwise. This water supply was inadequate for fire protection and sanitary purposes. Furthermore, the water system equipment then in use did not furnish sufficient pressure.

Due to the above described conditions the city of Litchfield determined upon the construction of a new water system, and employed an engineering firm to make an investigation looking to the construction of such system. The new water system recommended by the engineers contemplated expenditures in excess of the amount for which the city of Litchfield was permitted to become indebted under legal limitations restricting its indebtedness to an aggregate not exceeding 5 percent on the value of the taxable property therein.

Local people were willing to help to finance a water system if they could be satisfied that they would be repaid sometime. Accordingly, the petitioner was organized on February 16, 1924, under an act of the General Assembly of the State of Illinois entitled "An Act in relation to corporations for pecuniary profit" approved June 28, 1919. The articles of incorporation of the petitioner provide for a life of 50 years and for an authorized capital stock of 2,990 shares of preferred stock and 10 shares of common stock, all of a par value of $100 per share. They also provide that the management of the corporation shall be vested in seven directors. The preferred stock of the petitioner was subscribed for by about 250 persons, practically all of whom were citizens of Litchfield. The $1,000 par value of common stock was subscribed for by 10 of its citizens. They have received no dividends. The holders of the preferred stock have been receiving dividends ever since organization. During the period of construction, when the petitioner derived no revenues, the city paid the holders of preferred stock the amount of their dividends and the petitioner never repaid the city. During the years in controversy herein the petitioner paid dividends of 6 percent to the holders of the preferred stock.

On March 20, 1924, the city of Litchfield entered into a contract with the petitioner, but it was not until over a year thereafter that the new water system was completed.

The contract was carried out by the parties. Under the contract certain considerations moved from the city to the petitioner. As one of the considerations, the petitioner agreed to furnish and did furnish water, in the years in question, to the city for fire and other public purposes, without any further charge. The city allowed petitioner to use its existing supply main and distributing system in the

city, and kept the same in repair. The city owns the transmission lines within the city limits, while petitioner owns those outside of the city limits. The city paid for its hydrants. After the new water system was installed a great many more connections with the water system were made. The city, at its own expense, put in more water mains for fire protection and to supply the demand for service, spending about $100,000 therefor, and paid for them by special assessments. The total amount of bonds issued by the city of Litchfield for water purposes between July 1922 and April 1, 1931, was $149,400.

After the new water system was completed the water delivered to the consumers was clear, colorless and substantially free from disagreeable taste and odor, and was of a good sanitary quality. Due to the adequate supply of water, sewage disposal of the city was much improved. Since the completion of the new waterworks in 1925 there has been improvement in the sanitary conditions of the city and a marked reduction in the number of cases of typhoid fever and of intestinal infection.

The petitioner paid its secretary a salary, but none of its other officers received salaries. Its directors met once a month. They were guided by ordinances and resolutions of the city council.

The petitioner's gross income was derived from charges made for water furnished to private individuals, collected by the city and turned over to it, with the exception of 5 percent net thereof, which was retained by the city.

The petitioner paid a Federal income tax for the years 1925, 1926, 1927, and 1928. The income tax returns of the petitioner for the years 1929, 1930, and 1931, the years in question here, show, among other things, the following:

| Year | Gross income | Deductions | | | | Net income | Credit | Tax due |
| | | Interest | Depreciation | 5% to city | Total | | | |
|---|---|---|---|---|---|---|---|---|
| 1929 | $27,932.91 | $17,340 | $6,987.14 | $1,397.23 | $25,724.37 | $2,208.54 | $3,000 | None |
| 1930 | 25,558.19 | 16,770 | 6,987.14 | 1,277.80 | 25,034.94 | 523.25 | 3,000 | None |
| 1931 | 21,611.27 | 16,620 | 6,987.14 | | 23,607.14 | [1] 1,995.87 | | None |

[1] Net loss.

In the above returns the items termed "interest" represent the 6 percent dividends paid upon the petitioner's preferred stock.

Attached to each of the returns for 1929 and 1930 is a statement in which petitioner claims that it is exempt from Federal taxation.

The respondent in the notice of deficiency for the year 1929, among other adjustments, disallowed the deduction of dividends claimed in

the amount of $17,340, and increased the net income of the petitioner to $18,650.88.

The respondent, in the notice of deficiency for the year 1930, among other adjustments, disallowed the deduction of dividends claimed in the amount of $16,770, and increased the net income of the petitioner to $18,291.21.

The respondent, in the notice of deficiency for the year 1931, disallowed the deductions of dividends claimed in the amount of $16,620 and determined a net income of $14,624.13.

The respondent allowed the deductions claimed by the petitioner representing depreciation and those representing the 5 percent of net revenues derived from the water system and retained by the city of Litchfield.

The articles of incorporation of the petitioner and the contract between the petitioner and the city of Litchfield dated March 20, 1924, which were introduced in evidence as Exhibits 1 and 15, respectively, are incorporated in our findings by reference.

Upon the foregoing facts, the first issue raised by the pleadings is whether respondent erred in failing to allow the deduction of dividends paid to its preferred stockholders. The petitioner has not pressed this issue, since no mention is made of it in its brief and no mention was made of it in the opening statement of petitioner's counsel at the hearing. In any event, there is no provision in the statute for allowing the petitioner to deduct dividends. No adjustment of respondent's determination in this respect will be made.

The other issue raised by the pleadings is whether the petitioner is exempt from taxation for the years 1929, 1930, and 1931 under the provisions of section 103 (14) of the Revenue Act of 1928.[1]

The evidence discloses that the petitioner was not organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt from the tax imposed by the Revenue Act of 1928. Its charter shows that it was organized to provide and furnish a supply of water to the city of Litchfield, to sell and distribute water in that city to the inhabitants thereof, and to such other persons, firms, and corporations as might desire to purchase water, to construct, maintain, and operate a system of water supply and waterworks, pumping stations, filtration plants, and

[1] SEC. 103. EXEMPTIONS FROM TAX ON CORPORATIONS.

The following organizations shall be exempt from taxation under this title—

 *     *     *     *     *     *     *

(14) Corporations organized for the exclusive purpose of holding title to property collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt from the tax imposed by this title.

other appurtenances, to acquire, construct, and maintain a reservoir for the storage of water, and to do any and every thing necessary to the attainment of these objects. Furthermore, the proof shows that during the years in controversy the petitioner actually did other things besides simply holding title to property. The petitioner did not collect income from property and turn the entire amount thereof, less expenses, to the city of Litchfield or any other tax exempt organization. The city itself, under the contract, collected the water rents and paid over 95 percent of the net receipts to the petitioner, retaining 5 percent for itself.

We hold that the petitioner does not come within the provisions of section 103 (14) of the Revenue Act of 1928. See *Stanford University Bookstore*, 29 B. T. A. 1280 and *Sun-Herald Corporation* v. *Duggan*, 73 Fed. (2d) 298, in which latter case it is stated: " To obtain an exemption, the taxpayer claiming it must come precisely within the terms of the statute * * *."

It may not be amiss to point out that under section 116 (d) of the Revenue Act of 1928 [2] income accruing to any political subdivision of a state which is derived from any public utility or the exercise of any essential governmental function is exempt from taxation. As we construe section 116, it has reference to income directly accruing to a political subdivision of a state, and is to be invoked by the political subdivision itself. The city of Litchfield is not a party to this proceeding. However, it may be pointed out that the 5 percent of the net income derived from the operations of the waterworks which accrued to the city of Litchfield by virtue of the contract has not been taxed to this petitioner for the years in question. The petitioner claimed this 5 percent as a deduction and it was allowed by the respondent.

In *Citizens' Water Co.*, 32 B. T. A. 750, upon facts somewhat similar to those contained in the instant proceeding and more favorable to the taxpayer than the facts involved in the instant proceeding, we held that the net income of a private corporation operating waterworks under contract with a city is not exempt from tax under section 116 (d) of the Revenue Act of 1928. There the city owned a part of the corporation's stock and bonds and, as is true in the instant

[2] SEC. 116. EXCLUSIONS FROM GROSS INCOME.

In addition to the items specified in section 22 (b), the following items shall not be included in gross income and shall be exempt from taxation under this title:

* * * * * * *

(d) *Income of States, municipalities, etc.*—Income derived from any public utility or the exercise of any essential governmental function and accruing to any State, Territory, or the District of Columbia, or any political subdivision of a State or Territory, or income accruing to the Government of any possession of the United States, or any political subdivision thereof.

proceeding, had the right under contract to acquire ownership of the waterworks upon certain conditions. We there stated in part:

\* \* \* This paragraph [the first paragraph of section 116 (d)] was intended to exempt the city from taxation upon income which it actually receives from any public utility or from the exercise of an essential governmental function. Cf. *Philadelphia Rapid Transit Co.*, 8 Fed. Supp. 152. \* \* \* It is true, as petitioner points out, that the city under the terms of the ordinance could take full possession and ownership of the water works by giving petitioner one year's notice and paying par and accrued dividends on all outstanding stock, and thus get the benefit of accretions in the " water fund " arising out of the tax of 5 mills and unused earnings. But the city did not exercise this right during the taxable years here under consideration and we are not, therefore, impressed with petitioner's argument that its net income accrued to and became the property of the city of Burlington. The petitioner is a private corporation and the city is one of its stockholders. It is too well settled to require citation that a corporation is a taxable entity separate and distinct from its stockholders and that the income of a corporation is not the income of its stockholders. The first paragraph of section 116 (d), *supra*, exempts from taxation income which is received by a state or political subdivision thereof from any public utility. In our opinion, it grants no exemption to a public utility corporation even though a substantial portion of its unused earnings may at some future time accrue to the benefit of a political subdivision of a state.

Under the principles of the above cited authority we hold that the petitioner is not exempt from taxation under section 116 (d) of the Revenue Act of 1928. The latter portion of section 116 (d), which we have not quoted in the margin, has no application to the instant proceeding, since it applies only to contracts entered into by political subdivisions of a state prior to September 8, 1916, whereas the contract in question herein was not entered into until 1924.

The petitioner also maintains that it, as an instrumentality of the city of Litchfield engaged in an essential governmental function, is exempt from Federal taxation, independently of the statutory exemption. We find it unnecessary to determine whether the petitioner was, during the years in question, an instrumentality of the city of Litchfield or the State of Illinois, since, even if it were, it is not exempt. Only those instrumentalities of a state which are of a governmental nature, as distinguished from a proprietary or quasi-private nature, are exempt from Federal taxation. *Fox Film Corporation* v. *Doyal*, 286 U. S. 123, and *T. P. Wittschen*, 25 B. T. A. 46; and it has been held that the building and operation of a waterworks or water supply system by a city or district constitutes the exercise of a proprietary, rather than a governmental, function. *Denman* v. *Commissioner*, 73 Fed. (2d) 193, affirming *C. S. Denman*, 27 B. T. A. 256; and *T. P. Wittschen, supra.* Cf. *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, wherein the Supreme Court stated in part: " It is no part

of the essential governmental functions of a State to provide means of transportation, supply artificial light, water and the like."

Furthermore, even if it were assumed, for the purposes of discussion only, that petitioner was in the years in controversy an instrumentality of the State of Illinois, engaged in an essential governmental function, there is another reason why it should be held not exempt. It was incumbent upon the petitioner, in order to obtain exemption, to establish facts showing that the taxation of it imposed a substantial direct burden upon the exercise of an essential governmental function. *Burnet* v. *Jergins Trust*, 288 U. S. 508; *Fox Film Corporation* v. *Doyal, supra; Willcuts* v. *Bunn*, 282 U. S. 216; *Wanless Iron Co.*, 29 B. T. A. 834; affd. *Wanless Iron Co.* v. *United States*, 75 Fed. (2d) 779; certiorari denied, 295 U. S. 765; and *T. P. Wittschen, supra.*

In *Wanless Iron Co., supra*, we stated in part:

* * * The agency or instrumentality of the State is not immune from Federal taxation unless it is shown affirmatively by the party having the burden of proof (in these proceedings the petitioner) that the tax will impose a *substantial, direct burden* upon the state. If the influence of the tax is *remote* there is no immunity. This principle of immunity from Federal taxation of the instrumentalities of the state "has its *inherent* limitations." *Fox Film Corp.* v. *Doyal*, 286 U. S. 123; *Willcuts* v. *Bunn*, 282 U. S. 216. * * *

Petitioner has not here met its burden in this respect. It is true that the water rates would have to be in such amount as to cover all taxes, but there is nothing to show that the rates which it would be necessary to establish to cover the taxes in question would be exorbitant or prohibitive or that as a result thereof the citizens of Litchfield would refuse to subscribe to the service and thereby deprive the city of Litchfield of an adequate water system for health, fire protection, or other purposes. We fail to see, and petitioner has not shown us, that the imposition of the taxes in controversy upon it placed a direct or substantial burden upon the city of Litchfield so as to exempt it from Federal income taxation by virtue of the contract.

We hold that the respondent did not err in holding that petitioner is subject to Federal income taxation for the years 1929, 1930, and 1931.

*Decision will be entered for the respondent.*