DECATUR WATER SUPPLY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 68149, 72706. Promulgated April 9, 1936.

*Ralph J. Monroe*, Esq., for the petitioner.
*T. M. Mather*, Esq., for the respondent.

### OPINION.

MURDOCK: The Commissioner determined the following deficiencies in the petitioner's income tax:

| Docket No. | Year | Amount |
|---|---|---|
| 68149 | 1929 | $15,343.34 |
| 68149 | 1930 | 16,485.47 |
| 72706 | 1931 | 11,011.75 |

The questions presented for decision are (1) whether amounts required by its charter to be used, and used, by the petitioner out of its

alleged income for the respective years to retire its preferred stock were income to the petitioner subject to tax, or (2) whether these funds are to be excluded from gross income and exempt from taxation under the provisions of section 116, paragraph (d), Revenue Act of 1928. The facts have been stipulated. However, the stipulation need not be set forth in full in this report.

The city of Decatur, Illinois, for many years had supplied its inhabitants and industries with water from a nearby stream. When this system became inadequate and unsatisfactory, the city formulated a plan in 1920 for the creation of an adequate reservoir by constructing a dam across the entire valley of the stream near the city. The contract for the dam was let. Bonds were sold for the payment of the contract price. These bonds brought the city up to its constitutional debt limit and it was prohibited from obtaining further credit. It did not have money to purchase the lands necessary to complete the reservoir. The city, through its legal counsel, formulated a plan for completing the waterworks. The petitioner was organized and chartered on February 2, 1921, as a public utility to assist in carrying out the plan. The petitioner then entered into a contract with the city on April 4, 1921, under which the waterworks was constructed and operated until March 30, 1934, when the entire property was conveyed to the city and the petitioner dissolved.

The petitioner was incorporated under an act relating to corporations for pecuniary profit. Its authorized capital stock consisted of $999,000 par value of preferred and 100 shares of common stock without par value. The holders of the preferred stock were entitled to cumulative dividends at the rate of 7 percent per annum and no more. The company could retire the preferred stock at par at any time when the cumulative dividends had been fully paid. The charter further provided:

\* \* \* No earnings of the Company available for the payment of dividends shall be used for capital expenditures after two years from the date of the incorporation of the Company, but must be used either to pay dividends on the preferred stock or to retire the preferred stock. All sums realized from the sale of capital assets after two years from the date of the incorporation of the Company shall be used to retire preferred stock.

Whenever all of the preferred stock of the Company shall have been retired and all the debts and obligations of the Company shall have been fully paid and discharged, save current expenses, then, upon the assumption or payment of such current expenses by the City of Decatur, Illinois, a municipal corporation, or its successor, and upon the further payment to the Company of the sum of One Thousand Dollars, to be distributed by the Company to the holders of the common stock of the Company, the Company shall thereupon convey to the said City of Decatur, or its successor, all of the property and assets of the Company and the Company shall thereupon be dissolved.

One thousand dollars was paid in for common stock.

The company agreed in the contract of April 4, 1921, to acquire the necessary land and the right to flood it, to prepare it as a reservoir, to pay all expenses of altering roads and constructing bridges, and to make other necessary expenditures not to exceed $1,000,000. The city agreed to complete the dam and to supply the water to the city, through the system which it then owned, at reasonable rates to be fixed and collected by the city for the joint account of the city and the company. The water rents were to be deposited in a bank to the joint account of the city and the company. All water rents accruing and collected after May 1, 1921, were to be divided monthly between the parties as follows: first, the city was to receive a sum equal to its expenses incurred during the preceding month in the operation of the water system; 10 percent of the remainder was to go to the city and 90 percent to the water company. The contract was to continue in effect for 30 years, unless sooner terminated. All capital expenditures by the company were to be made only with the approval of the city. The city had the option to purchase within the 30 years the entire interest of the company in the joint undertaking at a sum sufficient to retire the outstanding obligations, to retire the outstanding preferred stock at par and accumulated dividends, and to pay the expenses of winding up and dissolving the company, including the sum of $1,000 to be distributed among the holders of its common stock.

Public-spirited citizens subscribed and paid for the entire stock issue of the petitioner. The petitioner had no other business or source of income aside from its operations under the contract. The water rents were collected by the city and deposited and disbursed in accordance with the contract and the charter of the petitioner. The amounts paid to the petitioner exceeded its operating expenses and the dividend requirements on preferred stock, and from the excess it retired portions of its preferred stock.

The city, on August 28, 1933, authorized the acceptance of the option to purchase contained in the contract. Thereafter, it sold its water revenue bonds and from the proceeds paid the petitioner on March 30, 1934, $214,978.98, with which the latter retired its common stock at $1,000, without dividends, retired all of its outstanding preferred stock at par with accrued dividends, and paid its miscellaneous bills and debts outstanding. The city in addition deposited in escrow with two banks the sum of $63,000 to cover the contingent liability of the petitioner for the tax herein involved and costs. The petitioner conveyed all of its property to the city on March 30, 1934.

The petitioner made income tax returns and reported as net income for each year, including the taxable years here in question, the amount of dividends paid to its stockholders. The balance of its gross receipts over current expenses and dividends was not

returned as income but was used to retire its preferred stock in accordance with its charter. With the exception of an item of $912, disallowed as a deduction for 1929, the entire deficiency determined by the Commissioner in each year has been computed by including in income the amount used in retiring its preferred stock.

The Commissioner, after the present proceedings had been instituted, made a jeopardy assessment of the taxes in question. The petitioner, with the approval and authorization of the city, paid the amounts under protest on April 25, 1934, from the funds deposited in escrow.

The parties are in agreement as to all facts and figures involved in this proceeding. The petitioner has always returned as its gross income an amount sufficient to pay its current expenses and the dividends on its preferred stock. It argues that the additional amounts which it received under the contract and which it was required by its charter to use in the retirement of its preferred stock were not income within the meaning of that term as used in the Sixteenth Amendment to the Constitution and in the Revenue Act of 1928. We have carefully considered the facts and circumstances of this case in connection with this argument of the petitioner, which it has so earnestly and capably presented, but we are unable to agree that the amounts in question were not income to the petitioner under the Constitution and also under the Revenue Act of 1928.

The petitioner is a private corporation, incorporated under an act chartering corporations for pecuniary profit. The evidence does not show that it received any more of the water rents collected than its proper share, based upon the portion of the plant which it owned. Obviously all of the amounts collected from the users of water were income to someone. The share allocated to the petitioner was not income to the city. We see no sound reason in this case for holding that less than all of the amount received by the petitioner was income to it. Amounts collected by a water company for water which it supplies to its customers represent gross income regardless of what use the utility makes of the funds thus collected. Cf. *Cleveland Railway Co.* v. *Commissioner*, 36 Fed. (2d) 347, affirming on this point 10 B. T. A. 310; certiorari denied, 281 U. S. 743. The mere fact that a part of the receipts must be used by the petitioner to retire its preferred stock is no justification for excluding that part of the rents from gross income. The receipt of such amounts increased the petitioner's net worth and gave it an earned surplus during the taxable years. In this respect it was no different from any other corporation. It is true that the common stockholders of the petitioner could never receive any greater benefit from the successful operation of the petitioner than the return of their origi-

nal capital investment of $1,000. Furthermore, the preferred stockholders could not benefit beyond the return of their capital investment, with accumulated dividends to the date of retirement of their stock. But the taxpayer here is the corporation and not the stockholders. The corporation as such derived the same benefit from these earnings as any other corporation would derive. The city, of course, had the option to purchase the petitioner's property in such a way that it would ultimately receive the benefit of the use of the funds in question for the retirement of the preferred stock. But in the taxable years it had not exercised that option and had not received any benefit from the retirement of the preferred stock. The payment of dividends on the preferred stock was just as beneficial to the city. Neither represented income to the city during the taxable years. If the operations of the petitioner had proven unsuccessful, the city might never have taken over its property. Losses in such case would have been losses of the company. Its stockholders would have been the ultimate losers in that case. This corporation must be treated as any other corporation for the purpose of computing its income tax liability. *Cleveland Railway Co.* v. *Commissioner*, *supra*. Cf. *Citizens Water Co.*, 32 B. T. A. 750; *Citizens Water Works, Inc.*, 33 B. T. A. 201.

The petitioner's next contention is that the funds in question must be excluded from gross income and exempt from taxation under the provisions of section 116, paragraph (d) of the Revenue Act of 1928. Section 116 entitled, "Exclusions from Gross Income" and provides that "the following items shall not be included in gross income and shall be exempt from taxation." Paragraph (d) is entitled, "Income of States, municipalities, etc." The first sentence is as follows:

Income derived from any public utility or the exercise of any essential governmental function and accruing to any State, Territory, or the District of Columbia, or any political subdivision of a State or Territory, or income accruing to the Government of any possession of the United States, or any political subdivision thereof.

The income in question did not accrue to the city of Decatur within the meaning of this provision. *Citizens Water Co.*, *supra; Citizens Water Works, Inc.*, *supra*. The provision applies to the 10 percent of the remainder of the joint funds retained by the city, rather than to the 90 percent turned over to the petitioner. The further provisions of section 116 (d) can have no application whatever to this case, since they apply only where a contract was entered into prior to September 8, 1916, whereas the petitioner in this case was not organized until 1921.

Reviewed by the Board.

*Decision will be entered for the respondent.*